[Sac. No. 1857. In Bank.—October 9, 1911.]

FRANK WILLIS, Respondent, v. N. H. LAURIDSON and
E. E. BARRY, Respondents, and SACRAMENTO
ROCHDALE COMPANY (a Co-Operative Association),
et al., Appellants.

TEMPORARY INJUNCTION—COMPLAINT AS BASIS FOR.—Where a verified
complaint is made the basis of an application for a temporary in-
junction, it takes the place of an affidavit and must be treated as
such, and the facts stated therein must stand the test to which oral
testimony would be subjected.

ID.—SUFFICIENCY OF AVERMENTS.—LEGAL CONCLUSIONS. — Averments
therein which are merely legal conclusions are not competent testi-
mony, though they might stand as matter of pleading. Unless the
statement, in the nature of a conclusion, is supported by the facts
or circumstances on which it rests, it is insufficient to sustain an
application for injunction. If the complaint, otherwise unsupported,
is open to attack on general demurrer, it is insufficient.

CO-OPERATIVE BUSINESS ASSOCIATION—BY-LAWS—NUMBER OF DIRECTORS
—FAILURE TO FILE BY-LAWS.—Under section 653e of the Civil
Code, a co-operative business association may by its by-laws pro-
vide for the number of its directors, and an election of directors in
the number so provided, although in excess of the number provided
for in its articles of incorporation, is not rendered illegal by reason of
the failure to file a copy of the by-laws with the county clerk prior to
the time of the election. The failure to so file the by-laws did not
render them illegal or void.

ID.—BY-LAWS APPARENTLY LEGALLY ADOPTED—FRAUDULENT INTENT TO
CONTROL ASSOCIATION.—By-laws of such an association which on
their face appear to have been duly adopted by the written consent
of a majority of the members of said association, filed with the
secretary thereof, will be deemed legal by-laws, and an averment that
an officer of the association, "for the purpose of carrying out his
fraudulent intention to control the management and operation" of the
association, caused the same to be filed with the county clerk, is
insufficient to show any fraud or attempted fraud on his part.

ID.—EQUALITY OF INTEREST OF MEMBERS—ISSUANCE OF MORE THAN ONE
SHARE TO SAME PERSON.—Although section 653c of the Civil Code
requires that the interest of all members of such association shall be
equal, the mere fact that more than one certificate of membership in
such association was issued to the same person is not evidence of
fraud, if such person, before attempting to benefit by such issue,
assigns his excess shares to persons qualified to hold the shares.

ID.—HOLDER OF CERTIFICATE—RIGHT TO DISPOSE OF DIVIDENDS.—The *bona fide* holder of such a certificate has the right to dispose of his dividends thereon, and the fact that no authority from the holder is on file with the association does not necessarily or inferentially imply that no such authority was given.

ID.—ILLEGAL ISSUANCE OF SMALL NUMBER OF CERTIFICATES—INJUNCTION AGAINST DECLARING DIVIDENDS—ELECTION OF DIRECTORS—BY-LAWS. —The mere fact that in a co-operative association having two hundred and fifty members, twenty-nine certificates of membership were illegally issued in the names of minors, or otherwise, will not warrant the issuance of an injunction restraining the association from declaring any and all dividends on its stock, or from holding any election for directors in accordance with its by-laws, or from adopting new by-laws.

ID.—NON-RESIDENT STOCKHOLDER.—The statute does not require residence in this state as necessary to eligibility to become a member of such an association.

ID.—FRAUD—SIGNING BY-LAWS BY AGENT.—No fraud can be imputed from the fact that the by-laws of the association were signed by an agent of a member instead of by the member in person.

ID.—CERTIFICATE ISSUED TO MINOR—PLEADING—AGE OF STOCKHOLDER.— An allegation that a certificate in such association was issued to a named person, who was at the time of its issuance a minor, without stating whether such person was a male or female, is insufficient to show that the certificate was illegally issued to a person under eighteen years of age.

ID.—INJUNCTION AGAINST DIVIDENDS OR VOTING STOCK—STOCKHOLDER NECESSARY PARTY.—A temporary injunction restraining the payment of dividends on stock in a corporation, or enjoining the stockholders from voting for the election of directors, will not be granted unless the stockholders whose rights are affected are made parties to the action.

ID.—PLEADING ESSENTIAL TO WARRANT INJUNCTION.—A complaint for an injunction which does not state facts sufficient to determine how plaintiffs' property will be permanently injured by the acts complained of, and which merely states general conclusions, as to multiplicity of suits and irreparable injury, not warranted by any pleading of facts, does not state facts sufficient to constitute a cause of action for equitable relief to enjoin the acts complained of.

ID.—DISCRETION REQUIRED IN ISSUANCE OF INJUNCTION.—To issue an injunction is the exercise of a delicate power, requiring great caution and sound discretion, and rarely, if ever, should be exercised in a doubtful case.

APPEAL from an order of the Superior Court of Sacramento County refusing to dissolve an injunction. C. N. Post, Judge.

The facts are stated in the opinion of the court.

Grove L. Johnson, and Wahrhaftig & Shinn, for Appellants.

Frank F. Atkinson, for Plaintiff and Respondent.

THE COURT.—By reason of the disagreement of the justices of the district court of appeal for the third appellate district, the above entitled cause was certified to this court.

In the district court of appeal, Chipman, J., prepared the following opinion, which, meeting the views of this court, is hereby adopted, and, for the reasons in that opinion given, the order appealed from is reversed, with directions to the trial court to grant defendants' motion to vacate the injunction:

"A temporary injunction was granted upon plaintiff's verified complaint. Defendants, other than Lauridson and Barry, moved to dissolve the injunction on the grounds: 1. That the facts alleged are insufficient to constitute a cause for an injunction; 2. That the court had no jurisdiction to issue said injunction; 3. That said injunction suspends the general and ordinary business of a corporation, and the same was granted without notice.

"The complaint, which is the basis of the order, is composed of 28 paragraphs and, with its exhibits, embraces 360 odd folios. It is not possible to present a satisfactory analysis or fairly comprehensive statement of its material averments, in a brief compass. Before examining the complaint it may be well to state some established rules of law which must govern us in determining its sufficiency as a basis for the extraordinary remedy of injunction. Where the verified complaint is the basis for the relief sought it takes the place of an affidavit and must be treated as such; and the facts so stated must stand the test to which oral testimony would be subjected. Averments which are but conclusions of law are not competent testimony, though they might stand as matter of pleading. Unless the statement, in the nature of a conclusion, is supported by the facts or circumstances on which it rests, it is insufficient to sustain an application for injunction. If the complaint, otherwise unsupported, is open to attack on general demurrer, it is insufficient. *Howard* v.

*Eddy*, 56 Kan. 498, [43 Pac. 1133] ; *State* v. *Parsons*, 77 Kan. 774, [95 Pac. 391] ; 22 Cyc. 941.

"The action is brought by plaintiff, as a stockholder, in his own right alone and in the interest of no others. The defendants are the association, in its corporate capacity, and certain eleven alleged stockholders. It is averred that the association filed its articles of incorporation with the county clerk on December 10, 1900, and filed the same with the secretary of state; that its objects are set forth in said articles, a copy of which is attached to the complaint as exhibit A; that, among other things, said articles provide that the number of directors shall consist of seven members and shareholders of the association; that on the —— day of December, 1900, the association, and the members thereof, purported to adopt a code of by-laws for its government, which was never filed in the office of the county clerk until about September 3, 1909, when it was so filed, a copy of which is attached to the complaint as exhibit B; that said by-laws provided that the number of directors should consist of eleven members; that on January 14, 1909, the members of the association met and voted for and purported to elect the defendants, other than defendant, the association, and defendant, Chappell, as directors and that said Chappell claims to have been elected a director about the —— day of November, 1909, and is now acting as such; that no other persons have been elected directors, since said January 14, except as before alleged, and ever since said date said defendants have purported to act as such directors and have managed the affairs of said association; that the said articles provide for the selection of seven directors and no more and said articles have never been amended but are as set forth in Exhibit A; that said code of by-laws is not a legal code of by-laws. It is then alleged that defendant, Reed, 'for the purpose of carrying out his fraudulent intention to control the management and operation of the said defendant association, on or about the 9th day of December, 1909, caused to be filed,' with the county clerk 'the purported by-laws claimed to have been adopted by said alleged board of directors, . . . so controlled by said defendant Reed, as herein alleged,' a copy of which is attached to the complaint, as exhibit D; and 'the said by-laws were never adopted at any regular or any meeting of the said

alleged board of directors . . . and the said by-laws . . . are not legal by-laws of said association'; that, under the law by which said association was incorporated, and under its articles, no member can hold more than one share of the stock and no person can become a member who is under the age of eighteen years.

"To this point the only averment of any irregularity is that the by-laws adopted in 1900 were not filed with the county clerk until 1909. By these by-laws it was provided that there shall be eleven directors whereas the articles provided for seven. The statute of 1895 (Stats. 1895, p. 221), also amended in 1905 (C. C. sec. 653e) requires the association, within forty days after it becomes an association, to adopt a code of by-laws, and a copy must be filed with the county clerk, but no time is prescribed within which this must be done. It then appears that, under said by-laws, the persons named as defendants were, on January 14, 1909, elected as directors of the association and have since managed its affairs. The statute authorizes the association by its by-laws to provide for the number of directors; C. C. sec. 653e; and the directors were chosen as thus provided and have since been and are now acting as such. They were, therefore, legally chosen and the failure to file a copy of the by-laws with the county clerk until in 1909 does not invalidate their selection nor does it render the by-laws void or illegal. Under the existing by-laws the members had a right to elect eleven directors.

"The by-laws, Exhibit D, do not differ materially from the by-laws first adopted and on their face appear to have been 'duly adopted by the written consent of a majority of the members of said association, filed with the secretary thereof.' They were, therefore, legal by-laws, and the averment that defendant Reed, 'for the purpose of carrying out his fraudulent intention to control the management and operation of the said defendant association, on or about the 9th day of December, 1909, caused to be filed' the said by-laws, shows no fraud or attempted fraud on his part.

"It is then alleged that certificates of membership Nos. 91, 92, 93 and 94, were issued to one Josephine Keith and that she assigned Nos. 92, 93 and 94 to three different persons and hence they were never legally issued by said association.

The statute provides that 'the rights and interest of all members are equal, and no member can have or acquire a greater interest therein than any other member has.' C. C., sec. 653c. We see no evidence of fraud in issuing to one person more than one share where that person, before attempting to benefit by such issue, assigns his excess shares to persons qualified to hold the shares. There is no averment that the issuing of the shares to Josephine Keith and her subsequent assignment of three of them was done with any fraudulent intent, or that the assignees were not qualified to hold the shares.

"It is next averred that certificate No. 59 was issued to one S. E. May and certificate No. 64 was issued to one Sam May and 'that plaintiff is informed and believes and upon such information and belief alleges that the said S. E. May and the said Sam May are one and the same person and upon such information and belief alleges that certificate of membership number 64 in said defendant association in the name of Sam May has been illegally issued.'

"There is no averment of fraudulent intent in the alleged irregular issue or that there has been or is intended any illegal use of the certificate No. 64.

"It is next alleged that certificates 72, 73, 74 and 75 appear separately in the names of Aliace Lawson, Frank Lawson, Margaret Lawson and Leahe Lawson and it is alleged on information and belief that said persons did not sign the book of by-laws and that 'the signatures of said persons on said book of by-laws appear to have been written by one and the same person' and upon information and belief it is averred 'that the dividends paid to the holders of said certificates or paid on account of said certificates of membership have been paid to E. D. Keith or Josephine Keith, each of whom is a *bona fide* member of the said defendant association and that there is no authority on file from said persons to said Keiths to represent them or to collect any dividend 'on behalf of said aforenamed persons.' The fact that authority from the holders of these certificates is not on file does not necessarily or inferentially imply that no such authority was given. The *bona fide* holder of a certificate would have the right to dispose of his dividend.

"It is next alleged that certificate 82 was issued in the name of F. J. Keith, number 83 to George Keith, 84 to Roscoe Keith,

85 to L. M. Keith, 86 to G. S. Keith, 87 to Lillian Keith, 88 to Edwin Keith, 89 to Lulu Keith, 102 to May Keith and 103 to Harry Keith. On information and belief it is alleged that said certificates were 'illegally issued by said defendant association and the same are not now legal shares of said defendant association'; and upon information and belief it is averred that 'said E. D. Keith has drawn the dividends payable and paid on the said certificates hereinbefore in this paragraph mentioned' and on information and belief it is alleged that there is no authorization on file authorizing him to receive said dividends. There is no averment of any fact from which it would appear that the certificates were illegally issued and it is not alleged that E. D. Keith received any dividends without authority so to do. Besides, these certificate holders are not complaining.

"It is next alleged that certificate No. 80 'issued in the name of Robert I. Reed was issued to a minor under the age of 18 years, to wit, of the age of about seven years and the said Robert I. Reed, at the time of the issuance of said certificate, did not sign the by-laws' and 'the dividends paid on account of said certificate or standing in the name of Robert I. Reed have been paid to defendant P. F. Reed,' and that said certificate was illegally issued and said dividends illegally paid. There is no distinct averment that Robert I. Reed, in whose name the certificate was issued, is the minor of seven years referred to. The statute fixes the eligible age for membership at eighteen years; C. C. sec. 653c. Assuming that this certificate was improperly issued, this fact alone would not justify the injunction.

"It is next alleged that certificate 105 was issued to Ruth Slocum and that at the time of its issue she was under the age of 18 years and hence was illegally issued. She may have been 18 years of age the next day or when the action was brought and, besides, no injury to plaintiff is shown by its issuance. It does not appear that the holder ever claimed any right under it.

"It is next alleged that certificate 115, 'issued in the name of Ruth Ann Reed, was issued to a minor under the age of eighteen years'; that she did not sign the by-laws 'and that dividends paid on account of said certificate number 115 have been paid to the said defendant P. F. Reed by said defendant

association.' There is no distinct averment that any dividends have been paid on this certificate and if it sufficiently appears that any were paid, no such injury has been shown as would warrant the issuance of an injunction. As in the preceding case, she may have been of age the day after the certificate issued or when the action was commenced.

"It is next alleged that certificate number 116 was issued to Eve G. Lewis and at the time he did not live in this state and did not sign the by-laws and 'that the dividends paid on account of said certificate have been paid to one Mrs. Ingraham, the mother-in-law of defendant P. F. Reed' and that 'at the time of the payment of said dividends . . . there was nothing on file . . . authorizing said Mrs. Ingraham to receive said dividends.' We find nothing in the statute requiring residence in the state as necessary to eligibility to become a member of the association. That Mrs. Ingraham happens to be the mother-in-law of defendant Reed would hardly be urged as ground for an injunction. If there was no authority on file for her to draw dividends at the time it may have been subsequently filed or the act ratified.

"It is next alleged that certificate 128 'was issued in the name of John Gilbert and subsequently transferred to one Mary E. Jones.' On information and belief it is alleged 'that at the time of the issuance of said certificate number 128 there was no such person in existence as the said John Gilbert who was entitled to own a share of said defendant association' and on information and belief it is alleged that the transfer to said Mary E. Jones was illegal and on information and belief it is alleged 'that the name of Mary E. Jones appearing on the book of by-laws of the defendant association was signed by the defendant J. J. Ruggles.' It is not alleged that John Gilbert never existed; the averment is that no such person existed 'who was entitled to own a share of said defendant association.' Why he was not entitled does not appear. Nor does it appear why the transfer of this share to Mary Jones was illegal. No fraud can be imputed if it be admitted that Ruggles signed the by-laws for Mary Jones and no injury is shown.

"A very similar case is certificate 129 alleged to have been issued to Fred Gilbert and was transferred to Maggie Yuell.

"It is next averred that certificates 135 and 217 ' are shown

by the records of said association to have been issued in the name of Frank Fox'; certificate 211 'in the name of one F. Fox'; 134 'in the name of one Frank Fox' and 136 'in the name of F. C. Fox'; that 'the names of the parties to whom the said certificates . . . were issued were signed on the book of by-laws by one Frank Fox; that the dividends paid for or on account of said shares . . . have been paid to one Frank Fox' and there is nothing of record to show that 'the said Frank Fox was authorized to receive said dividends on account of said shares numbers 218, 154 and 136.' As heretofore observed, it does not follow that the dividends were illegally paid because there was at the time they were paid no authority on file. This may have been subsequently furnished or may have been exhibited at the time but not filed. There is no averment that the certificates were illegally issued, or to fictitious persons.

"It is next alleged that certificate 225 was issued to one Baby Bagge; that the said Baby Bagge 'was at the time of the issuance of said certificate a minor' and said certificate was illegally issued. So far as appears, Baby Bagge might have been a minor and, being eighteen years of age, be eligible to membership. Whether Baby Bagge was a male or female does not appear.

"It is alleged that the directors 'have treated, recognized and counted and do treat, recognize and count, as valid, the said illegal certificates . . . and will continue to treat, recognize and count as valid said illegal certificates of membership, unless restrained.' Clearly, unless it be shown that the certificates are illegal, the directors should so treat them.

"Then follow paragraphs XXVIII to XXXVIII, both inclusive, which may be thus summarized:

"That for the purpose of carrying out the said fraudulent intent to control said association said P. F. Reed, who is secretary thereof, by and through the names of said illegal shareholders, caused to be elected directors of said association, a majority of whom have done the bidding of said Reed; that he has caused said directors to elect him manager of said association, and as such manager he has selected as employees certain of his relatives. No facts are shown why the directors exceeded their authority or violated any duty in electing Reed as manager and no facts are stated showing that his relatives

were unworthy employees.  It is alleged that he has caused
certain shares to be canceled which were owned by persons
who would not do his bidding—naming none such and stating
neither time nor circumstance of such alleged action; that he
has caused a new code of by-laws to be prepared, 'giving to
the said Reed and to said alleged board of directors absolute
control and management of the affairs of said association, and
to take over the rights and privileges of all members . . .
who will not act in accord with the wishes of said defendant
P. F. Reed'—as appears by Exhibit C; and that at the next
monthly meeting of said directors as fixed by the by-laws
filed on September 3, 1909, to be held on the second Monday
of December, 1909, the defendants other than defendant as-
sociation, have determined and will unless restrained adopt
said by-laws (Exhibit C) and will 'without right vote to adopt
and will adopt' said last named by-laws.  We have examined
this exhibit C and compared it with the by-laws, Exhibit B,
and find no such power given as is claimed.  The changes
proposed are not many nor are they such as the members may
not adopt.  The indorsements on exhibit C show that they
were to be adopted upon the written consent of members in
accordance with 'art. XII, sec. 3 of the present by-laws' which
provide that 'they may be amended upon the written consent
of two thirds of the members filed with the secretary.'  With-
out such consent the directors could not adopt a code of by-
laws.  But if they did assume to do so and thereafter attempt
to be governed by them it does not appear, either by averment
or from a comparison of exhibit B with exhibit C, that any
injury would come to any shareholder.

"It is alleged that defendant P. F. Reed, acting by authority
of said directors, has announced his intention of declaring a
dividend among the members 'and particularly to the said il-
legal shareholders hereinbefore mentioned' and unless re-
strained he will make such distribution 'and the portion of
the said . . . funds distributed by (probably means *to*) said
illegal shareholders will be received and retained by the
defendant P. F. Reed and converted to his own use.'  It does
not sufficiently appear that the alleged illegal shares can be so
classed or considered and, unless illegally issued, the plaintiff
cannot complain if Reed appropriates their dividends.

"It is then alleged that Reed 'has conceived the idea and

intent to control . . . the affairs of the defendant association by and for himself' and this he will accomplish, it is averred, by voting said 'fictitious and illegal stock issued by said defendant association as hereinbefore described, at a meeting of said defendant association or of said alleged board of directors . . . to be held December 13, 1909, as alleged in paragraph XXXII hereof, unless restrained.' It appears that there are outstanding two hundred and fifty shares, i. e. there are two hundred and fifty members, each having an equal voice with all others. It is not made to appear how Reed could accomplish his alleged purpose if it be admitted that all these alleged illegal votes are illegal and that he could control them, twenty-nine in all.

"It is next alleged that he intends to carry out his alleged purpose by voting these alleged illegal shares at the annual meeting to be held on January 11, 1910, in the election of a board of directors, who when elected 'will do and vote in regard to the conduct and management of said association as directed by said Reed.' It does not appear that he can work his purpose any more successfully in this regard than in his other alleged schemes for self-aggrandizement.

"Finally, it is alleged that if the said Reed votes such illegal certificates at said election, and if said directors treat, recognize or receive said illegal stock as legal, the said acts of defendants will cause plaintiff great and irreparable injury and 'no compensation can afford plaintiff adequate relief.'

"Upon a more careful examination of the complaint, and after disjointing it and finding out the full force of its several parts, I am convinced that the trial court was not justified in issuing the restraining order complained of. The court did not stop with its command not to recognize the validity of the certificates especially named in the preliminary injunction, which in my judgment was not authorized by any showing made, but the court forbade defendants from attempting to adopt any code of by-laws, or from attempting to declare any dividend or distributing any money of the association to any of the shareholders or members. Also forbade the election of any number of directors greater than seven, although the by-laws, which the complaint shows were adopted, provided for eleven directors, a number not forbidden by the statute.. There is no statement of facts such as would warrant the court

in preventing by its order the discharge of duties devolved upon the directors by statute and the by-laws duly adopted; there is no showing that would warrant the court in prohibiting all payments of dividends. Before the court could thus so seriously invade the rights of all the stockholders they should have been represented in some way in the action. Morawitz on Private Corporations, 2 ed., sec. 258; *Minnesota* v. *Northern Securities Co.*, 184 U. S. 235, [22 Sup. Ct. 308, 46 L. Ed. 499]. It has been held that in a suit to enjoin the voting of a stockholder's stock for the election of directors, he is an indispensable party. *Taylor* v. *Southern Pacific Co.*, 122 Fed. 147. The question is not one alone of jurisdiction. 'We put it,' said the United States supreme court, 'on the ground that no court can adjudicate directly upon a person's rights, without the party being actually or constructively before the court.' *Mallow* v. *Hinde*, 25 U. S. 194, [6 L. Ed. 499].

"The court has not only made an order affecting all the shareholders in respect to certain of their rights, but it has specifically undertaken to pass upon the legality of certain twenty odd certificates, the holder of no one of which is a party to the action or has had his day in court.

"Upon the general question, this court said, in *Bishop* v. *Owens*, 5 Cal. App. 83, [89 Pac. 844] : 'A complaint for an injunction which does not state facts sufficient to determine how plaintiff's property will be permanently injured by the acts complained of, and which states merely general conclusions, as to multiplicity of suits and irreparable injury, not warranted by any pleading of facts, does not state facts sufficient to constitute a cause of action for equitable relief to enjoin the acts complained of.' (Syl.)

"To issue an injunction is the exercise of a delicate power, requiring great caution and sound discretion, and rarely, if ever, should be exercised in a doubtful case. 'The right must be clear, the injury impending and threatened, so as to be averted only by the protecting preventive process of injunction.' *St. Louis S. F. M. Co.* v. *Sanitary S. F. M. Co.*, 161 Fed. 725, [88 C. C. A. 585].

"The complaint in this action, I think, falls far short of measuring up to these requirements."

Rehearing denied.