[S. F. No. 15923.   In Bank.—October 14, 1940.]

E. H. RENZEL CO. (a Corporation), Respondent, v. WAREHOUSEMEN'S UNION I. L. A. 38–44 (an Unincorporated Association) et al., Appellants.

Richard Gladstein, Aubrey Grossman and Gladstein, Grossman & Margolis for Appellants.

Henry B. Lister, Nathaniel H. Janes, Jerome H. Janes, Jerome R. Hellerstein, Carol King and Osmond K. Fraenkel, as *Amici Curiae,* on Behalf of Appellants.

H. A. Gabriel and I. M. Peckham for Respondent.

EDMONDS, J.—At the suit of the respondent, a corporation engaged in the wholesale grocery business, the appellants were enjoined from picketing its place of business, and, also, from conducting a secondary boycott by representing to its customers that it "is unfair to organized labor".

Upon the filing of the verified complaint, a temporary restraining order issued and when the matter came on for hearing in response to an order to show cause, testimony was offered and received from both sides. This procedure was apparently by agreement that the facts determinative of the right to an injunction *pendente lite* should be presented in this way rather than by affidavit. The complaint was also considered as part of the respondent's evidence, but it is settled law that where this practice is followed, the pleading "takes the place of an affidavit and must be treated as such; and the facts stated must stand the test to which oral testimony would be subjected. Averments which are but con-

clusions of law are not competent testimony, though they might stand as matter of pleading. Unless the statement, in the nature of a conclusion, is supported by the facts or circumstances on which it rests, it is insufficient to sustain an application for injunction". (*Willis* v. *Lauridson*, 161 Cal. 106, 108 [118 Pac. 530].)

Briefly stated, the following facts were shown by the complaint and the testimony introduced at the hearing:

At the time the controversy between the parties arose, the respondent maintained warehouses for the storage of merchandise and had about 45 employees, 23 of whom were warehousemen and teamsters and the remainder executives, clerical workers and salesmen. Their average wage was about $29 for a 45-hour week, plus a yearly bonus equal to about three weeks' salary. There was no dispute between respondent and its employees concerning wages or working conditions.

The warehousemen had union shop contracts in force with two wholesale grocers in San Jose. The minimum wage in that locality under the union scale was over $30 for a 44-hour week of work substantially the same as that performed in respondent's warehouse. Six of the respondent's employees applied for membership in the Warehousemen's Union, and through the appellant Montes it solicited the grocery company to sign a union shop contract. This the company refused to do, but Montes was told at the same time that he was free to persuade the men to join the union. Thereupon the appellants caused pickets to be placed at the respondent's places of business. These pickets "merely walked up and down", carrying banners bearing the inscription "Renzel's Grocery Company unfair to Organized Labor". However, upon several occasions the pickets followed the respondent's truck to customers' places of business and told them that the grocery company was unfair to organized labor.

The complaint includes two letters, which it is alleged, were sent by the appellants to the respondent's customers. These letters which purport to have been signed by Montes, state that two other wholesale grocery firms "have been organized and have agreements with the Teamsters' Union and the Warehousemen's Union and have been paying the union scale for the past three months", but respondent "refused to sign an agreement to pay the scale of both unions" and that the Labor Council has placed plaintiff on the "Un-

fair" and "We Don't Patronize" lists. The letters also requested the addressees to refrain from patronizing the respondent, and stated "we don't like to use our boycott against your merchandise" and "we are going to extend our campaign and take further action against Renzel Grocery Company and all stores and markets that continue to buy merchandise from this unfair firm".

From the testimony it appears that after the temporary restraining order was granted and prior to the hearing upon the order to show cause, 19 or 20 of the grocery company's employees made application to join the Teamsters' Union, an affiliate of the A. F. of L. Although the Warehousemen's Union is a C. I. O. affiliate, it is evident from the letters set forth in the complaint that it acted in cooperation with the Teamsters' Union, and the present case is not one in which a C. I. O. union picketed a shop already organized by the A. F. of L. So far as this controversy is concerned, the jurisdictional lines between the teamsters and warehousemen seem to have been agreed upon by them, and the briefs argue the case as one in which a union is attempting to unionize a nonunion shop.

However, aside from other questions, there is a fatal omission in the proof in this case which requires a reversal of the judgment. Neither the complaint nor the oral testimony includes facts showing that the respondent has suffered or will suffer any damage as a result of the appellants' acts.

The complaint alleges that the appellants "caused pickets to be placed in front of plaintiff's warehouse and said pickets carried signs and banners with the inscription painted thereon, 'Renzel Grocery Co. is unfair to organized labor' and . . . [the appellants] have ever since and do now maintain said pickets during business hours, in front of plaintiff's place of business". Other allegations are that the appellants, "with the intent and desire to damage" the grocery company, sent letters, which were pleaded in full, but there is no showing of the effect, if any, of these acts upon the employer's operations. Testimony offered on its behalf substantiated these allegations, but goes no further than to prove that the acts charged to have been committed by the appellants took place. There is no evidence whatever that the employer suffered any damage or even had reason to believe it would suffer damage because of any act of the appellants.

█ It is not enough to prove that one did certain acts with intent to injure another. To entitle a plaintiff to injunctive relief the burden is upon him to prove actual or threatened injury, and a court may not infer this from mere proof of acts intended to harm. █ This omission is not cured by the general statements of the complaint ''that great and irreparable injury will result'' from the acts described by the pleader. It has always been the rule in this state that such averments, standing alone, have no probative force and cannot be made the basis for injunctive relief. Facts concerning the irreparable injury which, it is asserted, will result to the complainant unless protection is extended to him must be pleaded in order that the court may consider whether his apprehensions are well founded. A mere allegation that such injury will result is not sufficient. (*Willis* v. *Lauridson, supra,* at p. 117; *California Nav. Co.* v. *Union Transp. Co.,* 122 Cal. 641 [55 Pac. 591]; *Mechanics' Foundry* v. *Ryall,* 75 Cal. 601 [17 Pac. 703]; *Golden Gate S. T., Inc.,* v. *San Francisco,* 21 Cal. App. (2d) 582, 585 [69 Pac. (2d) 899]; *Martin* v. *Danziger,* 21 Cal. App. 563 [132 Pac. 284].) █ A complaint for an injunction which alleges only general conclusions, not warranted by any pleading of facts, does not state a cause of action to enjoin the acts complained of. (*Davitt* v. *American Bakers' Union,* 124 Cal. 99 [56 Pac. 775]; *People* v. *Seccombe,* 103 Cal. App. 306 [284 Pac. 725].)

The order appealed from is reversed.

Gibson, C. J., Carter, J., and Moore, J., *pro tem.,* concurred.

Curtis, J., Shenk, J., and Marks, J., *pro tem.,* dissented.