[Civ. No. 3835. Fourth Dist. Nov. 23, 1949.]

MORENO MUTUAL IRRIGATION COMPANY (a Corporation), Respondent, v. BEAUMONT IRRIGATION DISTRICT (a Public Corporation) et al., Appellants.

Thompson & Colegate and Surr & Hellyer for Appellants.

John W. Preston, King & King and Best, Best & Gabbert for Respondent.

GRIFFIN, J.—This is an appeal by the defendants Beaumont Irrigation District, a public corporation, and others from a preliminary injunction restraining them, pending trial, from enforcing portions of a certain stipulated judgment between them and plaintiff Moreno Mutual Irrigation Company, a corporation. The latter corporation brought this action to quiet title to alleged water rights and to set aside the stipulated judgment, and sought temporary injunctive relief.

Counsel have adopted, for convenience sake, brief designations of the several parties, title of actions, property involved, and have referred to them as follows:

"(a) 'Moreno' shall mean Moreno Mutual Irrigation Company, a corporation.

"(b) 'Beaumont-Yucaipa parties' shall mean Beaumont Irrigation District, a public corporation, and six other mutual water companies.

"(c) '1926 action' shall mean that certain action No. 24570 brought by the Beaumont-Yucaipa parties against Moreno in the Superior Court of San Bernardino County entitled 'Yucaipa Water Company No. 1, a corporation, et al., plaintiffs, v. Moreno Mutual Irrigation Company, a corporation, et al.

"(d) '1929 Stipulation' means the stipulation for judgment in the 1926 action.

"(e) '1929 Judgment' means the judgment in the 1926 action, copy of which is annexed to Moreno's Second Amended Complaint in the pending litigation as Exhibit C.

"(f) '752 acres' means the land described in paragraph VII of Moreno's Fourth Amended Complaint in this action.

"(g) 'Beaumont-Yucaipa Basin' means that certain area defined in paragraph XXIII of the 1926 Complaint."

The Moreno Valley lies southwesterly and some miles distant from, the Beaumont-Yucaipa Basin, and intervening between Moreno Valley and Beaumont-Yucaipa Basin is a range of hills known as the "bad lands." According to the pleadings, in 1920, Moreno conceived the idea of developing water in the Beaumont-Yucaipa Basin, and transporting it across the bad lands to Moreno Township. To this end Moreno obtained a deed to 752 acres of land in the Beaumont-Yucaipa Basin. In 1921, the Beaumont-Yucaipa parties threatened suit and in that year the parties entered into a written agreement refraining from suing for a period of one year. In 1926, the Beaumont-Yucaipa parties instituted the 1926 action, after Moreno had drilled three wells on the 752 acres.

For a better understanding of the issues presented in the 1926 action the complaint alleged generally that the Beaumont-Yucaipa parties were serving water to lands valued then at more than $4,000,000; alleged the ownership thereof by the Beaumont-Yucaipa parties and of all water rights thereunder, the extent of the ownership of each party, and the number of acres irrigated by each; and that the inhabitants of the district, numbering upwards of 2,000 people, received their domestic water supply from the district. The complaint particularly averred the existence of a continuous underground body of percolating water in the Beaumont-Yucaipa Basin; "that said basin contains vast deposits of detritus sand, gravel and other alluvial material permeable by and saturated with water, and the geological formation of said basin forms and constitutes a natural subterranean reservoir containing large quantities of sub-surface water throughout its area," and in paragraph XXIII describes it with some particularity. It then alleges "That all of the wells . . . described, . . . including the . . . land . . . on which . . . the defendant, Moreno . . . had sunk wells . . . has been, from time immemorial, and still is, sub-surface water in contact and continuity, extending from each of said tracts, to each of the other tracts, owned respectively by said plaintiffs, . . . in said basin, and each of said wells reaches down into, and penetrates said water, and said sub-surface water constitutes and is the common source of water supply for each of the plaintiffs herein . . ." that "all of the subterranean waters contained in said basin constitute and are an entirely separate and distinct water plane from any water plane in any lands lying outside of said basin, and if any of the waters of said basin are withdrawn therefrom, and used on lands situate on lands beyond said basin, none of such waters, so withdrawn, will return to or reenter said basin"; that "No surface water nor any water in excess of the amount of water reasonably necessary to supply and maintain the rights, needs and uses of said plaintiffs, exists in said basin, and during no time are the waters of said basin more than sufficient for such rights . . ." that "for some years last past, the level of the underground water in and throughout said basin, has been rapidly declining; . . . the existing uses made of said water derived from said basin, already exceed the amount of the normal and natural underground water supply thereof, and no unappropriated water

now remains in said basin, and none of the subterranean waters thereof can be withdrawn and exported from said basin, without depriving the plaintiffs of the quantity of water in said basin to which the plaintiffs are respectively entitled . . . That the defendant, Moreno . . . recently entered upon certain lands . . . situate in said basin . . . and sunk at least four wells . . . installed pumping plants for the purpose of pumping water from said wells. That each of said wells so sunk by said defendant is located in said basin, over and in said permeable material, and each of said wells in this paragraph mentioned reaches down into, and penetrates the subsurface waters contained in said material which said water constitutes a common source of water supply for said plaintiffs as aforesaid; that said defendant now intends to immediately construct a pipeline, of water-carrying capacity, sufficient to conduct there through at least 500 inches of water, and extending from said wells of defendant to a tract of land, containing approximately 1200 acres of land lying in the township of Moreno . . . and said tract of land is situate far beyond and outside of any of the confines of said basin. That . . . Moreno . . . threatens that it will . . . pump water from said last-mentioned wells, and by means of said pipeline divert and conduct from said wells, and said basin forever hereafter . . . at least 500 inches of water . . . and export all of said water . . . from said basin and discharge all of said water on said tract of land, in said township of Moreno, which said last-mentioned tract . . . lies outside of the watershed, in which said basin is located. That said defendant, Moreno . . . will . . . export said quantity of water from said basin . . . and . . . which will . . . inevitably . . . deplete, exhaust and destroy the available supply of water of the plaintiffs. . . . That none of the water so threatened to be exported from said basin by said defendant . . . will, if so exported, ever return to said basin . . . and each of said plaintiffs is the owner of the right to have said waters remain in said basin . . . That all of said claims . . . of said defendants . . . to the right to conduct and export any subsurface or surface waters out of and from said basin, to any place beyond the confines thereof, are without right . . . whether the same be surface or subterranean or normal or flood or storm waters.'' The complaint asked that each of the plaintiffs be declared to be the owner of the water rights alleged and that title of each of them be quieted and that it be declared that none of the defendants own any right, privilege or easement of conducting

or exporting from or out of said basin, any of the waters thereof, to any place beyond the confines of said basin. It is then alleged that the Beaumont-Yucaipa parties, and those served by such parties, depended entirely on the water supply existing in that basin and that there was no surplus of water existing.

Defendant Moreno answered, denied generally and specifically the allegations of the complaint and in particular denied "that there is no surplus water in excess of the amounts of water reasonably necessary to supply or maintain the rights, needs or uses of the plaintiffs in said basin." It denied "that there is no unappropriated water under said basin . . . or under any basin . . . and deny that the wells sunk by these defendants as alleged in paragraph XXVI are sunk into any basin connected with the basin or water supply of the plaintiffs or any of them or touch the main source of water supply of the plaintiffs, and the defendants deny that the tract of land in the district in which the defendant Moreno . . . expects to supply is outside of the basin from which said defendant expects to take and carry water thereto; deny that any of the water underlying the defendant's land . . . is in any manner connected with the water supply or basin from which the plaintiffs . . . draw their water supply." Defendants then alleged "that the lands of the plaintiffs and defendants are in the Santa Ana watershed and that the underground water supplies in said watershed lie in the same general basin and that any water extracted from the lands of the defendant Moreno . . . transported to its district and used thereon for irrigation would naturally return to the said Santa Ana basin." And they deny that the taking of any water would in anywise injure plaintiff's lands.

It appears from an affidavit of one of the engineers then employed to make investigations, which affidavit is filed in the instant proceedings, that there were considerable negotiations between the respective parties looking toward the settlement of the litigation and that they accordingly agreed to a stipulated judgment which was subsequently entered. The stipulation to enter the judgment, signed by all parties in 1929, recites that the "making of any findings of fact and conclusions of law is hereby expressly waived."

By the 1929 judgment it was agreed and ordered that "each of said plaintiffs, as against said defendants, is the owner of the right to take and use water from the lands and water

sources alleged in the complaint herein to be owned by such plaintiff, lying within that certain tract of land specifically described in paragraph XXIII of said complaint and referred to in said paragraph as the 'Beaumont-Yucaipa Basin', at least to the extent set forth in said complaint, without any interference on the part of either of said defendants except as hereinafter specifically permitted, and said right of each of said plaintiffs is paramount to any of the rights of either of said defendants.'' It is then recited that ''the court refrains from deciding upon or in any way decreeing hereunder the truth of any allegation contained in said complaint relating to the alleged existence of said Beaumont-Yucaipa Basin, and the entire area of land contained within the alleged boundaries of said Basin set forth in said paragraph XXIII of said complaint as hereinafter generally referred to as 'said area', and no decision is made hereunder as to whether said area does or does not constitute a natural subterranean reservoir, nor is any decision made hereunder respecting the geological formation contained in said area.''

The judgment, as entered, respecting the settlement arrived at by the parties, provided in considerable detail that one of the wells on Moreno's property would and should act as the index or barometer well. The judgment recites that after 1930, the barometer well shall be used as a basis for ''determining the quantity of water which said defendants or either of them shall be permitted to pump or extract from any well or wells, tunnel or any underground water development now or hereafter existing in said area.'' An elaborate scale was prepared and included in the judgment and provided that where the water level in the ''index well'' reached a specified level downward, the amount of water Moreno could take from said wells was reduced accordingly, and when that index reached a certain figure all transportation or diversion of water to Moreno Township should cease. However, this did not affect Moreno's right to pump water for the benefit of its 752-acre tract. The parties had access to the readings at the ''index well'' under the judgment. A wier was installed by Moreno for the purpose of measuring water diverted from the wells of defendant and the recording sheets of the nilometer subsequently installed were made accessible to all parties at all times. It is further provided therein that none of the several maximum quantities of water which either of said defendants is permitted thereunder to pump from said area shall be increased or affected by the future acquiring of any additional

lands or water rights in said area, and that "No objection shall ever be made by any party to this judgment as to the interest or right of any such party . . . as to the validity of this judgment in so defining such interest . . . None of said plaintiffs shall ever hereafter sink any well or construct any underground water development within a radius of one mile from said Index Well . . . Each of the parties to this judgment waives all right of appeal therefrom, and no appeal shall be taken by any party hereto from this judgment or any part hereof, . . . That neither of said defendants has or owns any right to pump water in said area (to wit, the territory lying within the boundaries of the alleged 'Beaumont-Yucaipa Basin' as specified in paragraph XXIII of the complaint on file in this action) or any part thereof, or to directly or indirectly receive or divert any water at any time pumped in or from said area, or any part thereof, except as herein decreed. . . ."

It should be here noted that the 752 acres belonging to Moreno and the wells drilled thereon were alleged to be within the area described in paragraph XXIII of the complaint.

The judgment further provided that "each of said defendants . . . are hereby perpetually restrained and enjoined from directly or indirectly pumping any water in any part of said area or receiving or diverting any water at any time pumped in or from said area except as herein decreed, and from asserting any right to pump water in said area or any part thereof, or to divert or receive any water pumped from said area except as herein decreed. . . ."

Recognizing that the need for water might later cause Moreno to attempt to take water and to make claims contrary to the provisions of the 1929 judgment, it expressly provided: "In the event of any violation on the part of either of said defendants of any provision of this judgment neither advice of counsel, nor urgent need of water supply shall furnish any grounds of excuse or justification whatever for any such violation, and during the continuance of any such violation the right of either of said defendants to directly or indirectly pump any water in said area or receive any water pumped therein shall be suspended . . ." and that "No pumping of water in said area nor diverting of pumped water therefrom by either of said defendants shall ever be deemed adverse to the rights of any of said plaintiffs, nor shall the defense of laches, estoppel or any statute of limitations be ever pleaded

by either of said defendants against any of said plaintiffs with reference to any water pumped by either of said defendants in any of said area."

For a good many years after the rendition of the 1929 judgment Moreno respected the limitations imposed by that judgment and adjusted the pumping from the Beaumont-Yucaipa Basin to the schedule mentioned. About the summer of 1943, according to the "index well," the water level had dropped to such extent that further diversion of water by Moreno was threatened. Moreno wrote to the Beaumont-Yucaipa Protective Committee asking temporary relief from the 1929 judgment. As a "neighborly accommodation" this request was granted with the understanding that such pumping should never be deemed adverse to the rights of plaintiffs.

After an unsuccessful attempt to have the judgment modified by court action, Moreno then brought this action against the same Beaumont-Yucaipa parties in 1945, in the form of an ordinary quiet title action, alleging generally that plaintiff was the owner of the 752 acres described as "Beaumont-Yucaipa area"; that underlying said acreage there exists a "large, natural underground basin of water" generally known as "Beaumont-Yucaipa basin" which basin is one of six contiguous and adjoining basins, all of which are located within the "Beaumont-Yucaipa area"; that the subterranean waters thus gathered into each of said basins constitutes a separate and distinct water plane from the other basins within the *area* and that the supply and amount of water within the "Beaumont-Yucaipa basin" is dependent largely upon the underground flow of water from the other five subbasins. It is then alleged that at the time of the acquisition of the 752 acres of land overlying said "Beaumont-Yucaipa basin" by plaintiff, there were two water wells thereon in operation and producing water from said "last mentioned basin"; that thereafter, plaintiff drilled and bored several additional wells upon said land, installed pumping plants and constructed the necessary pipe lines and tunnels to convey water from said basin to the Moreno valley. It is then specifically alleged that "there is no unappropriated surplus water, or any other water, of or within said six basins, or any of them, or within said Beaumont-Yucaipa Area, susceptible or available for additional development or appropriation without depriving the plaintiff corporation of .its equitable and reasonable proportion thereof, . . . That the defendants, and each of them, assert and claim an interest and right adverse to plaintiff in

and to the waters of said six basins, and particularly in and to the waters of said 'Beaumont-Yucaipa Basin' and the said 'Beaumont-Yucaipa Area.' '' Judgment is prayed that defendants be required to set forth the nature of their several claims and that it be decreed that the plaintiff is the lawful owner of the right to continue to take and appropriate and to place to beneficial use from said ''Beaumont-Yucaipa basin'' the amount or amounts of water it has heretofore taken and appropriated.

Moreno's first amended complaint reiterates the allegations of the original complaint, alleges that there are in fact six contiguous and adjoining subbasins within the ''Beaumont-Yucaipa sub-basin'' and claims title to certain specified water rights therein.

The Beaumont-Yucaipa parties answered the first amended complaint and denied generally the allegations thereof and alleged that any and all waters appropriated, produced, taken or extracted by Moreno by or through any wells on the 752-acre tract of land during the period mentioned were so taken under the terms and provisions of the stipulated 1929 judgment, which judgment was attached to the answer as an exhibit, and there was the claim that by said judgment the respective rights of Moreno and the Beaumont-Yucaipa parties were finally determined, settled and adjudicated in and to the subject-matter of this action, i. e., the amount of waters the Moreno was entitled to take from the 752-acre parcel described in its complaint, and that the issues there involved are the same issues attempted to be raised in this quiet title action. A copy of the complaint and answer in the 1926 action was attached as an exhibit.

A second amended complaint was, by leave of court, filed by Moreno in the form of a quiet title action, with the same general allegations. The 1929 judgment was thereto attached and made a part thereof. It is then claimed that the judgment is unjust, illegal and inoperative against the claims of the rights of the plaintiffs and that such invalidity consists of (1) that the judgment is void for uncertainty in that it fails to declare the existence or extent of a common, single, and unrelated subterranean reservoir of water underlying the area described in said complaint; (2) that the judgment is void because it fails to define and specify the amount of water required for use, or that is being used, for beneficial purposes by the respective parties thereto; (3) that it is void for uncertainty in that it does not provide or declare how or in what

manner the production, taking and distribution of water by the Moreno would adversely affect the water supply of any or either of plaintiffs; (4) that it is void for uncertainty in that it does not appear how or whether the so-called "barometer well" can measure the effect and needs of the pumping of the wells by Moreno upon the water supply of plaintiffs; (5) that the judgment is void because it violates the public policy of the State of California as declared in article XIV, section 3 of the Constitution of the state in that said judgment wholly fails to define or limit the rights of the parties to the beneficial use of the water supply there involved or to find if all or any part of the existing water supply in the area described in the complaint in that action is required for beneficial uses by the plaintiffs in said action; (6) that the judgment is unjust and inoperative against Moreno because of mutual mistakes of fact of the parties thereto, as follows: (a) that each of the parties to said judgment, at and prior to the date thereof, believed that a single subterranean reservoir of water existed in the area described in the complaint in that action and that pumping of water by any one of the parties to said judgment would deplete or adversely affect the water supply of others in said supposed reservoir; (b) that the parties believed that the readings of the nilometer installed in the "barometer well" would accurately measure the effect of the pumping of plaintiff's wells upon the water levels in that area and upon the existing water supply of the other parties to said judgment; (c) that in truth and fact neither of the beliefs mentioned were in any way true; that pumping by plaintiff from either or any of its said wells will not and cannot affect the wells of any of the other parties to said judgment because of the lower water level of plaintiff's wells and because of the geological and hydrological conditions of said area as set forth. It is then alleged that the area mentioned and described in the judgment is now generally known and referred to by geologists as the "Beaumont-Yucaipa depression" and that said area is situated between certain faults; that in said area there is no single, continuous and interrelated subterranean reservoir for the underground storage of water but on the contrary it is split and divided by major and minor faults resulting in numerous basins being formed in the shape of separate underground water reservoirs, each being independent of the other; that the underground water levels in the several basins are not the same and vary accordingly; that all of plaintiff's wells except the "barometer well" are located in

the "Singleton basin" and that water cannot migrate or flow from any of said basins to the others; that the extracting and taking of water from plaintiff's wells does not in any way adversely affect the water supply of the defendants or any of them; that prior to 1942, Moreno believed that its wells in the "Singleton basin" and the wells of defendants in other basins were extracting and producing water from a common basin; that between 1942 and 1945 Moreno discovered that the pumping of its wells was not reflected in the "barometer well" by a corresponding lowering of the water table therein and accordingly in 1945 filed its original complaint in this action and employed competent geologists to make a study and report upon the ground and water conditions existing in the "Beaumont-Yucaipa depression" and that Moreno did not learn of the new matter and facts pleaded in this second amended complaint respecting the underground water conditions in that area until 60 days prior to its offer to file this second amended complaint.

Moreno then filed a third amended complaint by leave of court with the same general allegations and makes the additional claim that the 1929 judgment is void for the additional reasons that the judgment fails to find and adjudicate the amount of water required for beneficial use and being beneficially used by the plaintiffs in that action, and whether there is a surplus of underground water in the area described after supplying the beneficial needs and uses, if any, of the plaintiffs or the amount of such surplus, and for the further reason that the judgment failed to declare the existence of a common underground water basin in the area described in the complaint in that action. It is then alleged that plaintiff did not know, and had no means of knowing, that its belief in the existence of a common basin and natural underground reservoir for the storage of water in said area was a mistaken belief until its said geologists submitted to plaintiff a preliminary report of the geological and hydrological conditions in said area on or about the first day of May, 1947. In considering the demurrer interposed to the third amended complaint by defendants the trial court overruled the demurrer as to the sufficiency of the allegations to authorize the court to declare the 1929 judgment void as contrary to public policy, but held that there were not sufficient allegations to declare the judgment invalid on the ground of mistake.

Moreno then filed a fourth amended complaint elaborating

further in this respect, and the demurrer to the fourth amended complaint remains undecided.

In support of the temporary restraining order, in addition to these pleadings enumerated, both parties presented affidavits of eminent geologists, who gave conflicting opinions as to the various geological formations involved in the Beaumont-Yucaipa region, and as to whether the pumping of water from the wells located on Moreno's 752 acres affected the water supply of the Beaumont-Yucaipa parties and whether the said wells were in the Singleton Basin or in the Beaumont-Yucaipa Basin.

It is the position of the Beaumont-Yucaipa parties that no cause for relief from the 1929 judgment is stated in the pending action and that lacking such statement of a cause of action, no injunction can be supported since on its face the 1929 judgment controls the situation, and that the order granting the preliminary injunction should be reversed.

A preliminary injunction is warranted only if there is on file a complaint which states a sufficient cause of action for injunctive relief of the character embraced in the preliminary injunction. (*Bank of America* v. *Williams,* 89 Cal.App. 2d 21, 23 [200 P.2d 151]; *Willis* v. *Lauridson,* 161 Cal. 106, 108 [118 P. 530].) The essential conditions for granting temporary injunctive relief are that the complaint allege facts which appear to be sufficient to constitute a cause of action for injunction and that the injunction is reasonably necessary to protect the legal rights of the plaintiff pending litigation. (28 Am.Jur. § 14, p. 207.) Therefore, if the 1929 judgment is valid and existing and since it was pleaded by both parties to the action, it must be taken into consideration in determining whether or not plaintiff has stated a cause of action for injunctive relief.

Stripped of all unnecessary minutiae, the purpose of the instant action is a collateral attack upon the validity of the 1929 judgment. If, therefore, the judgment is valid and not subject to such attack, the restraining order preventing its enforcement is unauthorized. It is well settled in this state that a collateral attack on a judgment will not lie against such judgment unless the judgment is void on its face, that is, void as appears from an inspection of the judgment roll. (*Svetina* v. *Burelli,* 87 Cal.App.2d 707, 709 [197 P.2d 562]; *Burrows* v. *Burrows,* 10 Cal.App.2d 749, 751 [52 P.2d 606]; 49 C.J.S. 811.) Exception is made in case of extrinsic fraud or mistake. (*Olivera* v. *Grace,* 19 Cal.2d 570, 575 [122 P.2d

564, 140 A.L.R. 1328] ; *Henderson* v. *Henderson,* 85 Cal.App. 2d 476, 478 [193 P.2d 135].) An attempt to impeach a judgment by matters *de hors* the record is a collateral attack. (*Parsons* v. *Weis,* 144 Cal. 410 [77 P. 1007] ; *People* v. *Norris,* 144 Cal. 422, 424 [77 P. 998].) There is no contention or allegation of fraud having been practiced in the instant action. We must be here governed by the rules of collateral attack upon a judgment. (*Lieberman* v. *Superior Court,* 72 Cal.App. 18, 35 [236 P. 570].)

 The public policy Moreno claims is violated by the judgment appears in article XIV, section 3 of the Constitution which, in effect, recites that the welfare of the state requires that its water resources shall be beneficially used as fully as possible; that the waste of water in this state is to be prevented; that the conservation of water in this state is to be exercised with a view to the public welfare; that the right of anyone to water from any natural stream or water course is limited to that which is reasonably required for beneficial use; and that a riparian right in a stream or water course extends only to so much of a flow as may be used or required consistently with this section of the Constitution. The 1929 judgment was based upon stipulation. Moreno was as much of an actor in obtaining it as were any of the Beaumont-Yucaipa parties. Whether or not one is entitled in a collateral proceeding to claim that the judgment is void under such circumstances is discussed in *Driver* v. *International Air Race Assn.,* 54 Cal.App.2d 614, 620 [129 P.2d 771]. However, it appears that Moreno was and is an exporter of water with no overlying or riparian rights to the waters extracted from its wells, so far as Moreno Valley is concerned. Therefore, Moreno had no right to any water for export unless a surplus existed in the basin. The existence of such a surplus was in dispute at the time the 1926 action was instituted, and according to Moreno's own pleadings, if there was a surplus at any time it was converted into a deficit sometime between the time of the 1929 judgment and the institution of the present litigation.

From an examination of the judgment roll in the 1926 action it cannot be fairly said that the Beaumont-Yucaipa parties did not present the issues here attempted to be reviewed by this action to declare that judgment void. It was specifically alleged, as heretofore pointed out, that ''all of the lands, waters and wells described do lie within the Beaumont-Yucaipa

basin'' which basin is described with some particularity, and that ''each of said 'wells' reaches down into and penetrates the source of supply; that the level of underground water in said basin has been rapidly declining and that the existing uses exceed the normal supply and that ''no unappropriated water now remains in said basin.'' The answer, as indicated, clearly puts in issue these allegations. Since findings were waived, it must be presumed that every fact essential to the support of the judgment was proved and found by the court. (*Gray* v. *Gray*, 185 Cal. 598 [197 P. 945]; 24 Cal.Jur. 956, § 194.) One of those issues was the contention that there was no ''unappropriated waters'' available for exportation purposes by Moreno in addition to the amount allowed to be withdrawn under the judgment. The only issue reserved was the question of the geological formation contained in the area, or the allegation relating to the alleged existence of the ''Beaumont-Yucaipa basin'' and the extent of the area of land contained within its boundaries and whether said area did or did not constitute a natural subterranean reservoir. There is nothing in these reservations that would invalidate the judgment as being against public policy or otherwise. The 1929 judgment does not show on its face that it requires or even permits a waste of water or anything other than a full beneficial use of the water involved. In effect, the reservation indicated that the trial court was not going to determine the boundaries of the underground water basin but it was convinced that any excess pumping by Moreno from its wells for diversion purposes directly affected the Beaumont-Yucaipa parties' supply of water which they needed for beneficial use. The rule is that every presumption is in favor of the validity of the judgment and any condition of facts consistent with its validity will be presumed to have existed rather than one which will defeat it (*City of Salinas* v. *Luke Kow Lee,* 217 Cal. 252, 255 [18 P. 335]), and where the record is silent as to what was done it will be presumed in favor of the judgment that what ought to have been done was not only done but rightly done. Even though the existence of a jurisdictional fact be not affirmed in the record, it will be presumed. So far as the attack upon the judgment as being contrary to public policy is concerned, it is plain that none of the allegations of Moreno's complaint, other than those pleading the judgment roll, can be considered for the purpose of determining whether or not said judgment is contrary to public policy.

Our Supreme Court said in *McCreery* v. *Fuller,* 63 Cal. 30, 32: "where issues are made in a case and decided, whether with or without trial, the judgment is conclusive between the same parties, in any subsequent action for the same cause, as to all questions which were directly involved within the issues made, and which were, or might have been presented and decided," citing cases. And said that: "[S]uch questions cannot be again contested between the same parties in the same or any other court." See, also, *Antonelle* v. *New City Hall Commrs.,* 92 Cal. 228, 229 [28 P. 270], where it is said that where a case is tried without a jury, and findings are waived, all the issues made by the pleadings are presumed to have been found in favor of the petitioners.

No sufficient grounds are stated which would justify the trial court's order restraining the enforcement of the judgment based upon that ground.

The allegation of mistake, upon which Moreno relies to set aside the judgment, consisted of the belief of Moreno, as well as the belief of the Beaumont-Yucaipa parties "That there existed a subterranean reservoir or basin of sub-surface water in the alleged 'Beaumont-Yucaipa basin,' and that plaintiff's pumping, extracting and exporting of water from its wells would and did adversely affect and diminish the water supply of the other parties . . . whereas in fact no such reservoir or basin existed." And as alleged in the fourth amended complaint: "That during the period commencing in the year 1921, and ending in May, 1929, the water level in the so-called 'Barometer Well' had been lowered approximately 10 feet, and because of such lowering both the plaintiffs and the defendant in the said (1926) action concluded and believed that said lowering . . . was due largely to plaintiff's pumping and taking of water from its nearby wells. That because of such conclusion and belief, plaintiff entered into the aforesaid stipulation. . . . That plaintiff's said conclusion and belief and the stipulation agreed to as a result thereof were based on a mistake of fact . . .," as alleged above. 6 California Jurisprudence, sections 46-47, pages 78-80, considers the code sections on the subject of mistake and recites: " 'The mistake of which a party to a written contract may be heard to complain in equity can arise in only one of three ways: First, it may be a mistake of law. . . .; Second, it may be a mistake entertained by the plaintiff with the knowledge of the defendant arising under circumstances which impose the duty

upon the defendant to correct the plaintiffs' error. Defendant's failure to do so is itself a species of fraud and is treated as fraud . . .; The third species of mistake is that defined in section 1640 of the Civil Code, which declares that ''when, through fraud, mistake, or accident, a written contract fails to express the real intention of the parties, such intention is to be regarded, and the erroneous parts of the writing disregarded. . . .'' [§ 47.] A mistake is not operative to render a contract voidable if it affects merely some 'collateral' though material matter, constituting merely a matter of inducement. . . . The authorities recognize the difficulty of determining whether a mistake applies to an essential feature of the contract or to a purely collateral matter. It is firmly established that if the parties enter into a contract under the belief that the subject matter or consideration is in existence, and in effect condition their contract thereon, and, as a matter of fact, it is not in existence, such mistake will enable the party to avoid the contract. This rule, of course, *does not apply to cases where the parties are aware that the existence of the subject matter is doubtful and contract with reference thereto.*'' (Italics ours.)

Applying these rules, no mistake of law is claimed and the second ground is not established. The third ground does not apply under the exception as italicized. 17 Corpus Juris Secundum, pages 486-487, and 499, states the doctrine as follows:

''Where a party enters into a contract ignorant of a fact but meaning to waive all inquiry into it, or waives an investigation after attention has been called to it, there is no mistake in the legal sense. Moreover, mere ignorance of the facts is not necessarily a ground for relief, nor will the courts relieve one from the consequences of his own improvidence or poor judgment. Parties must exercise ordinary diligence in the execution of contracts and are chargeable with such knowledge as diligence would have disclosed, and may not avoid a contract on the basis of mistake where it appears that ignorance of the facts was the result of carelessness, indifference, or inattention . . . Where, . . . the contract concerns a matter about which there may be some doubt, and it appears that the existence of the thing was not an implied condition, but that the party intended to take the risk, then it is no answer to the enforcement of the agreement that the thing did not actually exist.''

There is no question about the belief of Beaumont-Yucaipa parties being that such a water basin did then exist and that the pumping of water by Moreno did affect and was diminishing their water supply and that they still believe these facts. They particularly alleged this belief as a fact in their complaint in the 1926 action. The fact that Moreno so believed at that time is not borne out by the judgment roll in that action. A contrary belief is shown and Moreno's pleadings clearly indicate that this was one of the doubtful or disputable questions which the parties desired to have determined. Whether the waiver of findings on this issue carried the presumption in favor of Beaumont-Yucaipa parties that ''all the issues made by the pleadings are presumed to have been found in favor of the respondent,'' as held in *Antonelle* v. *New City Hall Commrs.*, 92 Cal. 228 [28 P. 270], is problematical in the face of the notation in the judgment by the trial court. However, as between these parties, the question was in doubt and the parties entered into the stipulation and judgment knowing it was in doubt. The failure of the trial court to determine whether there was in fact a natural subterranean reservoir in the alleged Beaumont-Yucaipa Basin did not remove such doubt, and the parties, with full knowledge of such doubt, contracted for the stipulated judgment. Failure of the trial court to find on that subject was not fatal to the judgment obtained. Upon the issues presented the court did, in effect, find, as recited in the judgment, that ''each of said plaintiffs, as against said defendants, is the owner of the right to take and use water from the lands and water sources alleged in the complaint herein to be owned by such plaintiffs lying within that certain tract of land specifically described in paragraph XXIII of said complaint and referred to in said paragraph as the 'Beaumont-Yucaipa basin,' at least to the extent set forth in said complaint . . . and said right of each of said plaintiffs is paramount to any of the rights of either of said defendants.'' It further declared that the transportation of water from the Moreno wells did adversely affect the water supply of Beaumont-Yucaipa parties.

After operating under this judgment, as agreed upon, for over 16 years, Moreno now claims that it first discovered its mistake to wit: (1) that the taking of water by Moreno did not adversely affect the Beaumont-Yucaipa parties, which question was adversely determined against it by the judgment and pleadings in the prior action; and (2) that there was no

subterranean reservoir in the alleged "Beaumont-Yucaipa basin," which question was left open by the court's statement in the judgment. Whether the water came from a single basin or a series of basins became immaterial so long as the "Beaumont-Yucaipa parties" or rights of the parties were adversely affected thereby, and the trial court had the jurisdiction to make and determine all their respective rights and did so in definite terms by the judgment. Moreno should not, under the circumstances related, be authorized to declare null and void, on the ground of mistake, the judgment under which all parties operated, without a claim of mistake, for such a long period of time, and allowed to re-litigate the issue as to underground water conditions which would necessarily ensue, at great expense, if the pending litigation should go to trial upon the pleadings presented.

The other grounds of complaint are sufficiently disposed of by the pleadings, presumptions, stipulation and judgment in the 1926 action.

The temporary order enjoining defendants from enforcing the judgment is reversed.

Barnard, P. J., and Mussell, J., concurred.

A petition for a rehearing was denied December 19, 1949, and respondent's petition for a hearing by the Supreme Court was denied January 19, 1950. Shenk, J., and Carter, J., voted for a hearing.