[No. A042955. First Dist., Div. Five. Aug. 16, 1989.]

TRIPLE A MACHINE SHOP, INC., Plaintiff and Respondent, v. STATE OF CALIFORNIA et al., Defendants and Appellants.

COUNSEL

John K. Van de Kamp, Attorney General, Herschel T. Elkins, Assistant Attorney General, Albert N. Shelden and Michael R. Botwin, Deputy Attorneys General, Louise H. Renne, City Attorney, Kimberly A. Reiley and John Roddy, Deputy City Attorneys, Arlo Smith, District Attorney, Robert H. Perez and Steven J. Castleman, Assistant District Attorneys, for Defendants and Appellants.

Ira Reiner, District Attorney (Los Angeles), and Roderick W. Leonard, Deputy District Attorney, as Amici Curiae on behalf of Defendants and Appellants.

Fred M. Blum and Jaffe, Trutanich, Scatena & Blum for Plaintiff and Respondent.

---

**OPINION**

HANING, J.—The State of California et al.[1] appeal a preliminary injunction prohibiting them from contacting all present and certain former employees of respondent Triple A Machine Shop, Inc., in connection with civil and criminal proceedings appellants are prosecuting against respondent for alleged unlawful disposal of hazardous wastes. We previously granted supersedeas, and now reverse, concluding that neither the Rules of Professional Conduct nor the attorney-client privilege supports the injunction.

FACTS

In 1976 respondent leased space from the United States Navy at Hunter's Point Naval Shipyard in San Francisco. In the spring of 1986 naval personnel witnessed activities by respondent believed to violate California law governing storage and disposal of hazardous wastes, including dumping oily waste, chemical liquids and polychlorinated biphenyls (PCB) on the ground, creating hazardous waste ponds, disposing of sandblasting grit (often containing lead, copper, zinc and arsenic) and improper storage of asbestos.

On July 17, 1986, in response to a complaint from the Navy alleging illegal dumping of hazardous waste, James McCammon, a hazardous materials specialist from the State Department of Health Services (DHS), accompanied by Navy Lieutenant Leroy and respondent's assistant facilities manager, Fred Stivender, inspected respondent's facility and took samples which revealed asbestos and PCB's. McCammon returned to the facility the following day to observe respondent's operations. Among those present were James Jaffe, respondent's attorney, Stivender, and Albert O. Engel, respondent's president. McCammon observed numerous violations of California's hazardous substance laws.

---

[1] Also appealing is the San Francisco District Attorney. The appellate committee of the California District Attorneys Association has submitted an amicus curiae brief in support of appellants.

In September 1986 McCammon and two associates returned to respondent's facility to conduct a generator inspection. After Stivender told them he knew where all the wastes were dumped and who dumped them, they were refused access to the facility by respondent's attorney. Thereafter, DHS requested the assistance of the San Francisco District Attorney to obtain an inspection warrant.

In November 1986 the district attorney obtained a search warrant. In the supporting affidavit, an investigator for the district attorney set forth her communications with McCammon in which he described his aforementioned inspection of the facility and contacts with respondent's personnel. The investigator also described a conversation with Eric Smethurst, respondent's former director of security, in which Smethurst stated he was aware of open trench disposal of oily wastes and dumping of sandblasting wastes.

On June 11, 1987, while the criminal investigation was proceeding, the district attorney brought a civil action to enjoin respondent from dissipating its assets so they would be available to pay penalties and clean-up costs pursuant to any subsequent judgment. In connection therewith, William Hord, former shop superintendent for respondent and former Captain of the Hunters Point Fire Department, signed a declaration describing the handling and disposal of hazardous wastes. A preliminary injunction issued restraining respondent from dissipating its assets. Subsequently, the trial court ordered the civil action stayed pending completion of the criminal investigation.

In March 1988 respondent filed the instant action for injunctive relief alleging, inter alia, that appellants contacted its high level managerial employees without its notice or consent, in violation of the attorney-client privilege (Evid. Code, § 950 et. seq.), the attorney work product privilege (Code Civ. Proc., § 2018) and former rule 7-103 of the California Rules of Professional Conduct.[2] In support of its application respondent submitted declarations by James L. Jaffe, its attorney, and Albert O. Engel, its president. Jaffe declared that since at least July 1986 appellants knew he represented respondent in connection with the illegal hazardous waste storage and disposal matters. He also declared that appellants interviewed Stivender and Smethurst in preparation of the search warrant affidavit, and interviewed Hord pursuant to their civil action, without notice to Jaffe or

---

[2]The complaint was later amended adding the district attorney as a codefendant and alleged appellants conspired to violate the aforementioned privileges, constitutional rights and professional rules of conduct. The complaint sought a permanent injunction, declaratory relief and recusal of Steven Castleman, the assistant district attorney in charge of the criminal and civil actions.

respondent. However, Jaffe was unaware of "the exact nature of the information conveyed to [appellants] by past and present employees of [respondent]," and stated that discovery would be necessary to determine whether any privileged information had been conveyed. Engel declared that respondent's management had never given permission to its employees, officers or directors to discuss any matter with appellants.

In May 1988 the trial court issued a preliminary injunction enjoining appellants "from contacting any present employee of [respondent], or former employee of [respondent] who is a member of [respondent's] corporate control group, except for the purpose of service of a subpoena, concerning any matter which is directly or indirectly relevant to the facts as alleged in [appellants' civil action or respondent's civil action] without first giving [respondent's] counsel 72 hours notice prior to said contact." In support of appellants' motion for reconsideration or modification of the injunction, Assistant District Attorney Steven Castleman stated that following the hearing on the injunction, one of respondent's attorney's, Fred M. Blum, told him that neither Smethurst nor Hord w^re members of respondent's corporate control group. ▮ He further declared that the stated position of respondent was that membership of the corporate control group is privileged information, and protected by the right against self-incrimination.[3] Castleman's declaration further stated that Blum told him respondent had not authorized him to provide appellants with a list of respondent's current employees. Blum's declaration in opposition to the motion for reconsideration stated that "[Respondent's] counsel has at all times informed [appellants] that if [appellants] want to know if a specific individual that they wish to contact is an employee or control group member that said information will be conveyed. All that is necessary is for defendants to call and ask 72 hours prior to the contact."

At the hearing on the motion for reconsideration Castleman stated that the injunction was problematic since appellants were unable to identify the members of the corporate control group. In denying reconsideration, the trial court responded: "You have a choice. If you are sure they are not, you can interview them. If you are wrong, you get sanctioned. Or you can call them up and ask him, and hassle it out."

On or about February 8, 1989, a criminal complaint was filed charging respondent and an individual corporate officer with 16 counts of violation of

[3] The Fifth Amendment does not shield corporations from such disclosures. (*United States v. White* (1944) 322 U.S. 694 [88 L.Ed. 1542, 64 S.Ct. 1248, 152 A.L.R. 1202]; *Wilson v. United States* (1911) 221 U.S. 361 [55 L.Ed. 771, 31 S.Ct. 538]; *Hale v. Henkel* (1906) 201 U.S. 43 [50 L.Ed. 652, 26 S.Ct. 370]; *McLain v. Superior Court* (1950) 99 Cal.App.2d 109 [221 P.2d 300].)

Health and Safety Code section 25189.5 (unlawful disposal of hazardous wastes).

DISCUSSION

I

Although prosecution of the civil action has been stayed pending the criminal case, the injunction clearly affects the district attorney's investigatory process in both actions, since both actions arise out of the same conduct. ■ The decision to grant a preliminary injunction rests in the sound discretion of the trial court and will not be reversed unless the trial court " ' "exceeded the bounds of reason or contravened the uncontradicted evidence." ' " (*IT Corp.* v. *County of Imperial* (1983) 35 Cal.3d 63, 69 [196 Cal.Rptr. 715, 672 P.2d 121].) ■ The trial court considers two interrelated factors when deciding whether to issue preliminary injunctions: the interim harm the applicant is likely to sustain if the injunction is denied as compared to the harm to the defendant if it issues, and the likelihood the applicant will prevail on the merits at trial. (*Cohen* v. *Board of Supervisors* (1985) 40 Cal.3d 277, 286 [219 Cal.Rptr. 467, 707 P.2d 840]; *IT Corp.* v. *County of Imperial, supra,* at pp. 69-70.) However, before the trial court can exercise its discretion the applicant must make a prima facie showing of entitlement to injunctive relief. The applicant must demonstrate a real threat of immediate and irreparable injury (6 Witkin, Cal. Procedure (3d ed. 1985) Provisional Remedies, § 254, P. 221; *E.H. Renzel Co.* v. *Warehousemen's Union* (1940) 16 Cal.2d 369, 373 [106 P.2d 1]) due to the inadequacy of legal remedies. (6 Witkin, *op. cit. supra,* § 253 p. 220.) On appeal we examine the evidence in the light most favorable to the prevailing party, drawing all reasonable inferences in favor of the trial court's order (*Christopher* v. *Jones* (1964) 231 Cal.App.2d 408, 412 [41 Cal.Rptr. 828]), bearing in mind, however, that the existence of other effective judicial remedies (6 Witkin, *op. cit. supra,* § 277, p. 238) or overriding public interests (*id.,* § 282, p. 241) may compel denial of injunctive relief.

■ Respondent argued below that because appellants were simultaneously conducting a criminal investigation, injunctive relief was necessary to protect it against, inter alia, violation of former rule 7-103 of the California Rules of Professional Conduct.[4] Rule 7-103 provided, in relevant part: "A member of the State Bar shall not communicate directly or indirectly with a party whom he knows to be represented by counsel upon a

---

[4]On May 27, 1989, former rule 7-103 was replaced by rule 2-100. The effect of rule 2-100 is discussed, *post.* All further references to rules are to the California Rules of Professional Conduct. All references to rule 7-103 are to the former rule.

subject of controversy, without the express consent of such counsel." Rule 7-103 applied in both criminal and civil cases (see generally *Yorn* v. *Superior Court* (1979) 90 Cal.App.3d 669, 675 [153 Cal.Rptr. 295]), was " '. . . necessary to the preservation of the attorney-client relationship . . .' " (*Abeles* v. *State Bar* (1973) 9 Cal.3d 603, 609 [108 Cal.Rptr. 359, 510 P.2d 719]) and "was designed to permit an attorney to function adequately in his proper role and to prevent the opposing attorney from impeding his performance in such role." (*Mitton* v. *State Bar* (1969) 71 Cal.2d 525, 534 [78 Cal.Rptr. 649, 455 P.2d 753], citing former rule 12.)

Rule 7-103 applied to "matters in controversy," and its prohibitions attached once an attorney knew that an opposing party was represented by counsel even where no formal action had been filed. (See *People* v. *Sharp* (1983) 150 Cal.App.3d 13, 18 [197 Cal.Rptr. 436].) Such ex parte contact intrudes upon the function of opposing counsel and impedes his or her ability to properly represent the client. (*Ibid.*) In the instant case, when appellants became aware that respondent was represented by counsel, the prohibitions of rule 7-103 took effect.

In *Bobele* v. *Superior Court* (1988) 199 Cal.App.3d 708 [245 Cal.Rptr. 144], the Court of Appeal held that rule 7-103 did not prohibit an opposing counsel's ex parte contact with former employees of a corporation who were not members of the corporation's "control group." The corporation's "control group" was defined as " ' "officers and agents . . . responsible for directing [the company's] actions in response to legal advice." ' " (*Id.,* at p. 712, quoting *Upjohn Co.* v. *United States* (1981) 449 U.S. 383, 391 [66 L.Ed.2d 584, 592, 101 S.Ct. 677].) The *Bobele* court further concluded that the protections of rule 7-103 also extended to current noncontrol group corporate employees. As support for this conclusion, *Bobele* relied on *Upjohn,* wherein the United States Supreme Court rejected the control group test in determining the extent of the federal attorney-client privilege. (*Upjohn* v. *United States, supra,* 449 U.S. at pp. 390-393 [66 L.Ed.2d at pp. 591-594].) *Upjohn* construed the attorney-client privilege in federal courts, and recognized that in a particular corporate context, mid-level and lower-level employees "can, by actions within the scope of their employment, embroil the corporation in serious legal difficulties, and it is only natural that these employees would have the relevant information needed by corporate counsel if he is adequately to advise the client with respect to such actual or potential difficulties." (*Id.,* at p. 391 [66 L.Ed.2d at p. 592].)

Appellants contend the *Bobele* statement that rule 7-103 applied to all current employees regardless of their membership in the "control group" is incorrect. However, any question whether current "noncontrol group" cor-

porate employees lie within the scope of such protection is resolved by new rule 2-100, effective May 27, 1989. ■ Rule 2-100 provides, in relevant part: "(A) While representing a client, a member [of the state Bar] shall not communicate directly or indirectly about the subject of the representation with a party the member knows to be represented by another lawyer in the matter, unless the member has the consent of the other lawyer. [¶] (B) For purposes of this rule, a 'party' includes: [¶] (1) An officer, director, or managing agent of a corporation or association, and a partner or managing agent of a partnership; or [¶] (2) An association member or an employee of an association, corporation, or partnership, if the subject of the communication is any act or omission of such person in connection with the matter which may be binding upon or imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization. . . ."

The "Drafter's Notes" accompanying rule 2-100 state, in part: "Rule 2-100 is intended to control communications between a member [of the Bar] and persons the member knows to be represented by counsel unless a statutory scheme or case law will override the rule. . . ." (Drafter's Notes (1989) No. 1 West's Cal. Legis. Service, p. R-21.) The Drafter's Notes also provide: "Paragraph (B) is intended to apply only to persons employed at the time of the communication." Thus, rule 2-100 permits opposing counsel to initiate ex parte contacts with unrepresented former employees, and present employees (other than officers, directors or managing agents) who are not separately represented, so long as the communication does not involve the employee's act or failure to act in connection with the matter which may bind the corporation, be imputed to it, or constitute an admission of the corporation for purposes of establishing liability.

No evidence was presented in the instant controversy that appellants violated rule 2-100. None of the persons contacted by the district attorney was represented by counsel, none except Stivender were present employees, and none were officers, directors or managing agents of respondent corporation. Since appellants have confirmed that they do not intend to contact any persons covered by rule 2-100, there is no basis for the injunction on that ground.

## II

■ Respondent rejoins that compliance with the ethical rule does not resolve the dispute, and cites the attorney-client privilege as additional justification for the injunction. The parties debate whether the ethical rule or the privilege is broader, but in so doing miss the point. Rule 2-100 does

not define the scope of the attorney-client privilege; rather, it bars ex parte communications with opposing parties regardless of whether the information sought, obtained or conveyed is privileged from disclosure. ■ The privilege is statutorily prescribed (Evid. Code, §§ 900-920, 950-962), and serves to protect the attorney-client relationship by shielding from disclosure all confidential communications encompassed therein. (See *Mitchell* v. *Superior Court* (1984) 37 Cal.3d 591, 599-600 [208 Cal.Rptr. 886, 691 P.2d 642].) It applies regardless of the forum in which it is asserted, and even where the contact with the opposing party is authorized, such as during trial or discovery proceedings. (2 Witkin, Cal. Evidence (3d ed. 1986) § 1107 et seq.)

However, the application of the attorney-client privilege to particular individuals becomes more complex when the client is a corporation. (See *Commodity Futures Trading Comm'n* v. *Weintraub* (1985) 471 U.S. 343 [85 L.Ed.2d 372, 105 S.Ct. 1986]; *Upjohn Co.* v. *United States, supra,* 449 U.S. 383; *D.I. Chadbourne, Inc.* v. *Superior Court* (1964) 60 Cal.2d 723 [36 Cal.Rptr. 468, 388 P.2d 700]; *Alpha Beta Co.* v. *Superior Court* (1984) 157 Cal.App.3d 818 [203 Cal.Rptr. 752]; Annot., Right of Attorney to Conduct Ex Parte Interviews with Corporate Party's Nonmanagement Employees, 50 A.L.R. 4th 652; Annot., Attorney-Client Privilege in Federal Courts: Under What Circumstances Can Corporation Claim Privilege for Communications From Its Employees and Agents to Corporation's Attorney, 9 A.L.R.Fed. 685.)

The scope of the attorney-client privilege in cases of corporate clients was established by our Supreme Court in *D.I. Chadbourne, Inc.* v. *Superior Court, supra,* 60 Cal.2d at pages. 736-738: "[R]eason dictates that the corporation not be given greater privileges than are enjoyed by a natural person merely because it must utilize a person in order to speak. If we apply to corporations the same reasoning as has been applied in regard to natural persons in reference to privilege, and if we adapt those rules to fit the corporate concept, certain principles emerge clear. These basic principles may be stated as follows:

■ "1. When the employee of a defendant corporation is also a defendant in his own right (or is a person who may be charged with liability), his statement regarding the facts with which he or his employer may be charged, obtained by a representative of the employer and delivered to an attorney who represents (or will represent) either or both of them, is entitled to the attorney-client privilege on the same basis as it would be entitled thereto if the employer-employee relationship did not exist;

"2. When such an employee is not a codefendant (or person who may be charged with liability), his communication should not be so privileged unless, under all of the circumstances of the case, he is the natural person to be speaking for the corporation; that is to say, that the privilege will not attach in such case unless the communication constitutes information which emanates from the corporation (as distinct from the nonlitigant employee), and the communicating employee is such a person who would ordinarily be utilized for communication to the corporation's attorney;

"3. When an employee has been a witness to matters which require communication to the corporate employer's attorney, and the employee has no connection with those matters other than as a witness, he is an independent witness; and the fact that the employer requires him to make a statement for transmittal to the latter's attorney does not alter his status or make his statement subject to the attorney-client privilege;

"4. Where the employee's connection with the matter grows out of his employment to the extent that his report or statement is required in the ordinary course of the corporation's business, the employee is no longer an independent witness, and his statement or report is that of the employer;

"5. If, in the case of the employee last mentioned, the employer requires (by standing rule or otherwise) that the employee make a report, the privilege of that report is to be determined by the employer's purpose in requiring the same; that is to say, if the employer directs the making of the report for confidential transmittal to its attorney, the communication may be privileged;

"6. When the corporate employer has more than one purpose in directing such an employee to make such report or statement, the dominant purpose will control, unless the secondary use is such that confidentiality has been waived;

"7.    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"8.    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"9. And in all corporate employer-employee situations it must be borne in mind that it is the intent of the person from whom the information emanates that originally governs its confidentiality (and hence its privilege); thus where the employee who has not been expressly directed by his employer to make a statement, does not know that his statement is sought on a confidential basis (or knowing that fact does not intend it to be

confidential), the intent of the party receiving and transmitting that statement cannot control the question of privilege;

"10. . . . . . . . . . . . . . . . . . . . . .

"11. Finally, no greater liberality should be applied to the facts which determine privilege in the case of a corporation than would be applied in the case of a natural person (or association of persons), except as may be necessary to allow the corporation to speak."

Thus, it is clear that not all corporate employees are necessarily encompassed within the attorney-client privilege, just as rule 2-100 does not bar contact with all corporate employees. For example, it is possible in any given case that a corporate officer or director covered by rule 2-100 may not be privy to information protected by the attorney-client privilege, while a lower level employee who is not shielded from contact under rule 2-100 may be in possession of substantial privileged information. However, this does not enable corporate counsel to automatically assert the privilege as to every corporate employee and on that basis enjoin opposing counsel from any and all contact with employees not covered by rule 2-100.

It is axiomatic that the privilege covers only those communications protected by statute. In that regard, Evidence Code section 952 requires that the transmission of information or advice must occur "in the course of [the attorney-client] relationship." ■ The privilege protects only the disclosure of communications between attorney and client. It does not protect disclosure of the underlying facts which were communicated (*Upjohn Co.* v. *United States, supra,* 449 U.S. at pp. 395-396 [66 L.Ed.2d at p. 595]; *Coy* v. *Superior Court* (1962) 58 Cal.2d 210, 219-220 [23 Cal.Rptr. 393, 373 P.2d 457, 9 A.L.R.3d 678]), and it does not extend to independent witnesses (*D.I. Chadbourne, Inc.* v. *Superior Court, supra,* 60 Cal.2d at p. 737; *Greyhound Corp.* v. *Superior Court* (1961) 56 Cal.2d 355, 399 [15 Cal.Rptr. 90, 364 P.2d 266]; *Grosslight* v. *Superior Court* (1977) 72 Cal.App.3d 502, 506 [140 Cal.Rptr. 278]; *People* v. *Lee* (1970) 3 Cal.App.3d 514, 527 [83 Cal.Rptr. 715]; 2 Witkin, Cal. Evidence, *op. cit. supra,* § 1113, p. 1053.)

■ In the instant case it appears that the information sought by appellants concerned nonprivileged observations by the witnesses, and that those observations occurred outside any attorney-client relationship. Thus, respondent has not demonstrated that appellants have violated, or attempted to violate the attorney-client privilege. Respondent's application for injunctive relief is based on little more than the bare assertion that, unless enjoined, appellants may obtain privileged information. The mere possibility

that appellants may inadvertently obtain privileged information is an insufficient basis for the present injunction.

Since the application of the privilege in the corporate employee context is determined by the facts on a case-to-case basis (*D.I. Chadbourne, Inc.* v. *Superior Court, supra,* 60 Cal.2d 723; *Commodity Futures Trading Comm'n* v. *Weintraub, supra,* 471 U.S. 343; *Upjohn Co.* v. *United States, supra,* 449 U.S. 383), we do not hold that respondent is precluded under any circumstances from showing that a particular employee not covered by rule 2-100 may be excluded from ex parte contacts if necessary to protect privileged communications. We simply conclude that no such showing has been made here. Nor is respondent without remedy if appellants inadvertently or improperly obtain access to privileged information. If opposing counsel's conduct is sufficiently egregious, the court may disqualify him or her from further participation in the case (*Chronometrics, Inc.* v. *Sysgen, Inc.* (1980) 110 Cal.App.3d 597 [168 Cal.Rptr. 196]) and, under certain circumstances, may exclude improperly obtained evidence or take other appropriate action to achieve justice and ameliorate the effect of improper conduct. (*Peat, Marwick, Mitchell & Co.* v. *Superior Court* (1988) 200 Cal.App.3d 272 [245 Cal.Rptr. 873].)

## III

■ Respondent also asserts the work product rule (Code Civ. Proc., § 2018) and the Sixth Amendment as additional grounds for the injunction. The record supports neither. There is no indication that appellants have sought or intend to seek any work product of respondent's counsel. (See 2 Witkin, Cal. Evidence, *op. cit. supra,* § 1142 et seq.; *Greyhound Corp.* v. *Superior Court, supra,* 56 Cal.2d at pp. 399-401.) Nor have respondents demonstrated any threat to their Sixth Amendment rights. "Absent a privilege (such as attorney-client or attorney work product), 'counsel for all parties have a right to interview an adverse party's witnesses (the witness willing) in private, without the presence or consent of opposing counsel. . . .' [Citation.]" *Bobele* v. *Superior Court, supra,* 199 Cal.App.3d at p. 713.)

## IV

The most significant effect of the injunction lies in its impact on the investigation and prosecution of the criminal charges. ■ The separation of powers doctrine requires judicial restraint in enjoining criminal investigations or prosecutions. The prosecutor's authority stems from the executive branch of government (Cal. Const., art. III, § 3), and the investi-

gation and gathering of evidence relating to criminal offenses is the prosecutor's responsibility and rests solely within his or her discretion. (*Hicks* v. *Board of Supervisors* (1977) 69 Cal.App.3d 228, 241 [138 Cal.Rptr. 101].) The discretionary authority vested in the district attorney to investigate and prosecute criminal conduct is considered too vital to the interest of public order to be subjected to prior restraint by the courts except under extraordinary circumstances. (*Manchel* v. *County of Los Angeles* (1966) 245 Cal.App.2d 501, 505, 510 [54 Cal.Rptr. 53]; *Pitchess* v. *Superior Court* (1969) 2 Cal.App.3d 644, 648 [83 Cal.Rptr. 35]; *Reporters Com.* v. *American Telephone & Telegraph* (D.C. Cir. 1978) 593 F.2d 1030, 1065 [192 App.D.C. 376].) "The balance between the Executive and Judicial branches would be profoundly upset if the Judiciary assumed superintendence over the law enforcement activities of the Executive branch upon nothing more than a vague fear or suspicion that its officers will be unfaithful to their oaths or unequal to their responsibility." (*Reporters Com.* v. *American Telephone & Telegraph, supra,* at p. 1065.)

Federal decisions have recognized that injunctive relief against criminal investigations is available only under extraordinary circumstances, and have required "egregiously illegal conduct" by the prosecutor (*Jett* v. *Castaneda* (9th Cir. 1978) 578 F.2d 842, 845), "a clear basis in fact and law," (*United States* v. *Chanen* (9th Cir. 1977) 549 F.2d 1306, 1313), or "a clear and imminent threat of such future misconduct." (*Reporters Com.* v. *American Telephone & Telegraph, supra,* 593 F.2d at p. 1071, italics omitted.)

The exercise of judicial restraint in this area is based not only on the fundamental doctrine of separation of powers, but also on the recognition that the law contains adequate remedies for common forms of governmental misconduct in criminal proceedings. (See, e.g., *Massiah* v. *United States* (1964) 377 U.S. 201 [12 L.Ed.2d 246, 84 S.Ct. 1199] [prohibition against use of evidence obtained in violation of Sixth Amendment];[5] *Mapp* v. *Ohio* (1961) 367 U.S. 643 [6 L.Ed.2d 1081, 81 S.Ct. 1684, 84 A.L.R.2d 933]; *Marshall* v. *Barlow's, Inc.* (1978) 436 U.S. 307 [56 L.Ed.2d 305, 98 S.Ct. 1816] [suppression of evidence seized in violation of the Fourth Amendment]; *People* v. *Bolton* (1979) 23 Cal.3d 208, 212-215 [152 Cal.Rptr. 141, 589 P.2d 396]; Pen. Code, § 1181, subd. 5 [sanctions for prosecutorial

---

[5] The United States Supreme Court has not ruled on the application of *Massiah* to corporate defendants. However, other federal courts have indicated that *Massiah* applies to such prosecutions. (*United States* v. *Thevis* (5th Cir. 1982) 665 F.2d 616, 645, fn. 35; *United States* v. *Rad-o-Lite of Philadelphia* (3d Cir. 1979) 612 F.2d 740, 743; *United States* v. *Kilpatrick* (D.C.Colo. 1984) 594 F.Supp. 1324, 1351, revd. on other grounds, (10th Cir. 1987) 821 F.2d 1456.) However, the high court has ruled that corporations enjoy protection under the due process and equal protection clauses. (*Bronx Brass Co.* v. *Irving Trust Co.* (1936) 297 U.S. 230 [80 L.Ed. 657, 56 S.Ct. 451].)

misconduct]; *People* v. *Superior Court* (*Greer*) (1977) 19 Cal.3d 255 [137 Cal.Rptr. 476, 561 P.2d 1164] [disqualification of prosecutor for conflict of interest].)

As we have indicated, the present record does not disclose any threat of governmental misconduct or immediate and irreparable harm. Appellants have not engaged in conduct violative of rule 2-100, and have unequivocally stated their intention to comply fully with the rule. They do not seek privileged information or attorney work product. Since this was the basis on which the injunction was sought and issued, and such a basis does not exist, the injunction cannot stand.

The order granting the preliminary injunction is reversed and remanded with directions to deny the application.

Low, P. J., and King, J., concurred.