[No. A057580. First Dist., Div. Five. Sept. 14, 1993.]

AEROJET-GENERAL CORPORATION et al., Plaintiffs and Appellants,
v.
TRANSPORT INDEMNITY INSURANCE et al., Defendants and
Respondents.

[Opinion certified for partial publication.*]

*Pursuant to rules 976 and 976.1, California Rules of Court, this opinion is certified for publication except for part I.

998

COUNSEL

Lasky, Haas, Cohler & Munter, Moses Lasky, Richard Haas and John E. Munter for Plaintiffs and Appellants.

Bronson, Bronson & McKinnon, Alan J. Lazarus, Gary T. Walker, Kevin G. McGurdy, Hancock, Rothert & Bunshoft, Richard L. Seabolt, Morris, Polich & Purdy, Steven M. Crane, Bishop, Barry, Howe, Haney & Ryder, Jeffrey N. Haney and Arthur E. Fisher for Defendants and Respondents.

## OPINION

**HANING, J.**—The law firm of Lasky, Haas, Cohler & Munter (appellant) appeals from an order imposing monetary sanctions against it in connection with its representation of Aerojet-General Corporation and Cordova Chemical Company (collectively, Aerojet or plaintiffs) in the underlying action. The sanction order is based on the conduct of Scott DeVries, an attorney who at all times relevant to this action was a member of appellant law firm. DeVries was an innocent recipient of privileged documents prepared by counsel representing several of the defendants. The sanction order was based on the trial court's conclusion that DeVries acted unethically and in bad faith in failing to immediately notify opposing counsel of his receipt of the documents, and using information contained therein to his own advantage.

## FACTS

This lawsuit by Aerojet against several of its liability insurers involves an insurance coverage dispute arising from widespread contamination of property at and near Aerojet's Sacramento facility. (See *Aerojet-General Corp.* v. *Superior Court* (1989) 211 Cal.App.3d 216 [258 Cal.Rptr. 684].)

Sometime between July 1988 and August 1989, when all discovery was stayed because of a writ petition pending in this court, DeVries received a packet of documents concerning the Aerojet litigation from David Strode, an Aerojet employee. Strode, who was Aerojet's director of risk management, received the documents from Aerojet's insurance brokers, Emett & Chandler. When Strode was deposed he could not remember who at Emett & Chandler had sent him the documents, and no discovery was conducted of Emett & Chandler to determine how it obtained the documents.

According to DeVries, the only item he was interested in was a memorandum revealing the existence of a witness, Warren Michaels. Michaels was a Sacramento-based independent insurance adjuster who investigated a prior industrial accident at the Aerojet facility. The memorandum by an attorney with Bronson, Bronson & McKinnon (Bronson), opposing counsel herein, described an interview with Michaels and contained the attorney's assessment of Michaels's "witness potential" in the litigation. DeVries initially contacted Michaels by telephone and spoke with him about the case. When the stay was lifted and discovery resumed, DeVries took Michaels's deposition.

Curiosity developed about how DeVries had learned of Michaels's existence because his name had not been divulged during the discovery process. In a telephonic discovery hearing on November 1, 1990, DeVries revealed that he learned of Michaels from a document that had originated from the Bronson firm, which represented a number of the defendant insurers. At this point the Bronson firm assumed there was a single document naming Michaels which had been mistakenly copied and sent to appellant.

Almost a year later, Bronson searched its records to find the document naming Michaels. At this point it was discovered that the memorandum naming Michaels was part of a larger packet of documents that had presumably been sent to Bronson's client, Crum & Forster, the parent corporation for the insurers represented by Bronson. No discovery was directed to Crum & Forster to determine whether or how copies of the documents may have been forwarded to Emett & Chandler, but it appears that Emett & Chandler, as broker not only for Aerojet but also for several of the defendants'

reinsurers, was in a chain of distribution of some documents from Crum & Forster. The record contains insurance certificates with the names of both entities printed thereon. Although a substantial portion of the documents contained information known to plaintiffs, such as a listing of correspondence to and from plaintiffs' counsel, a schedule of future court appearances and a recitation of rulings at recent court hearings, some of the information was privileged.

When deposed in connection with respondents' motion for sanctions, DeVries acknowledged that he had no reason to believe that Bronson or its clients had consented to the disclosure of the documents. Nevertheless, he reviewed them, and did not immediately notify any opposing counsel, the special discovery master, or the trial court that he had received them. DeVries did not mention the documents to his colleagues who were working on the Aerojet litigation, nor to anyone else in appellant's office. He kept the documents for a period "of weeks to months" on his desk or credenza, and did not put them in the Aerojet case file. The documents were ultimately destroyed "during a routine housecleaning."

DeVries indicated his belief that Michaels's identity should have been disclosed in discovery. The record before us on this aspect of the case does not indicate whether plaintiffs had propounded discovery inquiries that would have required Michaels's disclosure. However, it is clear that had such discovery been initiated, Michaels's existence and identity would have to be disclosed.

The sanction order was not based on DeVries' failure to advise opposing counsel of his receipt of the documents, but for his failure to do so in a timely fashion. It recites that the documents given to DeVries were "undeniably a privileged communication between opposing counsel and his client detailing pretrial and trial strategies." Furthermore, "[n]either the Bronson office nor Crum & Forster had knowledge of or had consented to Aerojet's possession of these documents." The court summarized the conduct that it found to be "unethical and in bad faith . . . : [¶] . . . [¶] Upon receipt of the documents, Mr. DeVries failed to contact opposing counsel. Mr. DeVries failed to investigate how his client obtained the documents. Mr. DeVries failed to tell his partners he had received the documents from Aerojet. Mr. DeVries looked at the documents and used the information contained therein to his own advantage. Finally, Mr. DeVries destroyed the documents."

However, the trial court did not sanction DeVries. Rather, the sanction order directed appellant law firm to pay all expenses, including attorney fees

and costs, incurred by defendant insurers in bringing the sanction motion and in conducting discovery to determine how the disclosure occurred. Several defendant insurers (hereafter respondents)[1] submitted declarations detailing their expenses, and the monetary sanctions eventually awarded by the court totalled $22,499.74. It was further ordered that Warren Michaels be precluded from testifying during any phase of the trial. The court denied respondents' motion to foreclose plaintiffs from seeking recovery under an insurance policy as an additional sanction. Although appellant originally resisted barring Michaels's testimony at trial, this aspect of the court's order is not challenged in this appeal, since the trial has long since been concluded, and a separate appeal is pending from the final judgment.

DISCUSSION

I*

. . . . . . . . . . . . . . . . . . . . . . . . .

II

This is one of those cases where it is helpful at the outset to emphasize what is *not* at issue. This case does not involve an attempt to introduce privileged communications into evidence, nor to obtain such information through formal discovery. DeVries did not violate any laws, statutory or decisional, or any rules of court or rules of professional conduct in the manner by which he obtained the subject information. It is undisputed that DeVries is free of any wrongdoing in his initial receipt of the documents.

The issue concerns the duty of an attorney who, without misconduct or fault, obtains or learns of a confidential communication (Evid. Code, § 952) among opposing counsel, or between opposing counsel and opposing counsel's client. Assuming there to be such a duty, it becomes more difficult to define when the confidential communication reveals a relevant and potentially helpful witness, such as occurred here, regardless of whether the

---

[1]There was a standing order in this case to the effect that all information exchanged within and among defendant insurers, defense counsel, and the defense steering committee was "communicated for the limited purpose of assisting in a common cause and shall not constitute a waiver of the attorney-client, work product, . . . , or any other privilege." Due to the acknowledged unity of interest among insurers and the fact that the documents contained work product and privileged information with respect to the joint defense effort, the trial court allowed a number of defendant insurers to seek sanctions even though they were not direct parties to the communication between Bronson and Crum & Forster. (See *Insurance Co. of North America* v. *Superior Court* (1980) 108 Cal.App.3d 758, 771 [166 Cal.Rptr. 880, 14 A.L.R.4th 581].)

*See footnote, *ante*, page 996.

witness should have been revealed through discovery. There is no State Bar rule of professional conduct, no rule of court nor any statute specifically addressing this situation and mandating or defining any duty under such circumstances.

■ In response to respondents' argument that DeVries should not even have read the documents at issue, which they support with an American Bar Association ethics opinion, we note that this complex litigation involves hundreds of insurance policies and parties, numerous law firms, scores of individual attorneys and a great number of documents. The files were voluminous—the attorneys were swamped with pleadings, correspondence, discovery and other documents. Their job entailed careful review and cataloging of the documents coming across their desks, and one cannot identify, let alone analyze, many of these documents until they have been reviewed. In this case the documents at issue were not all contained on legal letterhead. The telephone logs were simply labeled "Aerojet" and were on plain paper with no identifying characteristics. The Michaels memorandum was on plain paper; it was identified as a memo "To: Aerojet File [¶] From: RAC." Given the number of attorneys and documents involved in this case, DeVries cannot be faulted for examining this memorandum.

■ Respondents also complained that the subject documents revealed their litigation strategy, particularly their plans to file a summary judgment motion on the coverage issue. However, at the time DeVries obtained the documents, the summary judgment motion had already been made, argued and granted, and discovery had been stayed pending this court's ruling on plaintiffs' petition for writ of mandate. If respondents were somehow damaged by this ex post facto revelation or by any other, they did not specify how or why in the proceedings below or on appeal. They sought sanctions only (1) to preclude plaintiffs from calling Michaels as a witness, (2) to prevent plaintiffs from recovering under one of the policies by which they were insured, and (3) for attorney fees for time expended in locating and plugging the leak in their own organization.

Respondents' motion was based on the grounds that Michaels was revealed in the documents received by DeVries, and the insurance policy was discussed therein. Respondents also sought monetary sanctions and attorney fees for their efforts in attempting to determine how the subject documents were relayed from Crum & Forster to Emett & Chandler, and to make certain that no further leaks of such information occurred. They did not claim any specific damage or harm to their case based on the disclosure of the documents, nor did they seek sanctions for such. (Respondents would be

hard pressed to argue that their defense suffered any real damage, since they prevailed in the jury trial below.) They did not, nor do they now claim that DeVries engaged in any misconduct or wrongdoing in the initial receipt of the documents.

 The attorney-client privilege is a shield against deliberate intrusion; it is not an insurer against inadvertent disclosure. Further, not all information that passes privately between attorney and client is entitled to remain confidential in the literal sense. The most obvious example is information that is required to be disclosed in response to discovery, such as the identification of potential witnesses. Consequently, whether the existence and identity of a witness or other nonprivileged information is revealed through formal discovery or inadvertence, the end result is the same: the opposing party is entitled to the use of that witness or information. This fundamental concept was lost in the skirmish below.

"[T]he attorney-client privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts upon which the communications are based [citations]" (*Benge* v. *Superior Court* (1982) 131 Cal.App.3d 336, 349 [182 Cal.Rptr. 275]), "and it does not extend to independent witnesses [citations]" (*Triple A Machine Shop, Inc.* v. *State of California* (1989) 213 Cal.App.3d 131, 143 [261 Cal.Rptr. 493]) or their discovery. (See also, *Smith* v. *Superior Court* (1961) 189 Cal.App.2d 6, 13 [11 Cal.Rptr. 165, 88 A.L.R.2d 650]; *City & County of S.F.* v. *Superior Court* (1958) 161 Cal.App.2d 653, 656 [327 P.2d 195].) Nor can "the identity and location of persons having knowledge of relevant facts" be concealed under the attorney work product rule of Code of Civil Procedure section 2018. (*City of Long Beach* v. *Superior Court* (1976) 64 Cal.App.3d 65, 73 [134 Cal.Rptr. 468], quoting Code Civ. Proc., former § 2016.)

It appears that discovery was supervised by a special master, and the trial court does not appear to have examined or considered appellant's contention that Michaels should have been disclosed in discovery, but the record does not indicate that respondents have ever denied that contention. We do not have any record of the discovery proceedings before us in this appeal, but whether respondents should have disclosed Michaels is irrelevant to our ultimate decision. For example, if respondents either deliberately or negligently failed to disclose the existence of a relevant witness in response to discovery requests, they would hardly be in a position to take advantage of their conduct if that information was subsequently inadvertently disclosed. To go one step further, even if discovery aimed at the disclosure of this information had not been initiated by the plaintiffs, only the actual communication between attorney and client is privileged; the underlying factual

information, e.g., the existence of the witness, is not. (*Triple A Machine Shop, Inc.* v. *State of California, supra,* 213 Cal.App.3d at p. 143; *Benge* v. *Superior Court, supra,* 131 Cal.App.3d at p. 349.)

■ The sanctions herein were awarded under the authority of section 128.5 of the Code of Civil Procedure, which authorizes sanctions for "bad-faith actions or tactics that are frivolous or solely intended to cause unnecessary delay." (Code Civ. Proc., § 128.5, subd. (a).) "Frivolous" is defined as "(A) totally and completely without merit or (B) for the sole purpose of harassing an opposing party." (Code Civ. Proc., § 128.5, subd. (b)(2).) There is no evidence in the record that DeVries, who was representing plaintiffs, caused or attempted to cause any unnecessary delay in the proceedings below; respondents did not suggest to the trial court that he did. Nor can we conclude that deposing a relevant witness constitutes frivolous conduct, in that it is "totally and completely without merit," or conduct that is undertaken "for the sole purpose of harassing an opposing party."

Respondents contend the authority for sanctions is found in *Peat, Marwick, Mitchell & Co.* v. *Superior Court* (1988) 200 Cal.App.3d 272 [245 Cal.Rptr. 873]. *Peat, Marwick* was a suit by the State of California against an accounting firm for accounting malpractice. During the course of the proceedings the defendant merged with the accounting firm that the state had retained as its expert witness, and did so in a manner designed to conceal the merger proceedings from the state until the final merger had been accomplished. This court upheld the trial court's order precluding the defendant from controverting the state's evidence on certain aspects of the case in which the state's former accounting expert had been involved. *Peat, Marwick* does not support respondents' position. *Peat, Marwick* was a conflict of interest case, wherein the state's expert witness had a contractual duty toward its client, the State of California. DeVries had no similar duty to respondents, who were his adversaries in the litigation. His duty was to protect the interests of his own clients.

■ If the underlying information which respondents sought to prevent plaintiffs from using is not privileged, and if such information was revealed to plaintiffs' counsel through no fault or misconduct of his own, plaintiffs and their counsel were entitled to use it. If plaintiffs and their counsel were entitled to use the information, respondents are not entitled to sanctions by way of attorney fees expended in their attempt to prevent plaintiffs from utilizing it. In the instant case, the existence of witness Warren Michaels was not privileged. Michaels was not unknown to Aerojet in the literal sense—he had previously adjusted a workers' compensation claim by an Aerojet

employee, and he had knowledge relevant to the litigation. Appellant was not precluded from deposing Michaels or calling him as a witness at trial, subject to the usual rules of evidence. (*Triple A Machine Shop, Inc.* v. *State of California, supra,* 213 Cal.App.3d at p. 143; *Benge* v. *Superior Court, supra,* 131 Cal.App.3d at p. 349; *City of Long Beach* v. *Superior Court, supra,* 64 Cal.App.3d at p. 73; *City & County of S.F.* v. *Superior Court, supra,* 161 Cal.App.2d at p. 656.)

Respondents' motion to strike the insurance policy from the case and preclude plaintiffs from seeking any recovery thereunder was properly denied. Consequently, they were not entitled to attorney fees for seeking this form of sanction.

As to fees for finding and eliminating further leaks of information, the record does not support any finding or inference that plaintiffs or their counsel obtained the subject documents by any unlawful or improper means. Indeed, the only inference supported by the record is that Crum & Forster sent copies of the documents to Emett & Chandler. Appellant has not been shown to be responsible, and therefore has no obligation for respondents' attorney fees for searching out an inadvertent disclosure within their own organization. Finding the source of the disclosure is a circumstance with which respondents would have been confronted even if DeVries had immediately reported his receipt of the documents.

We think that the manner in which DeVries obtained the information in this case—through documents inadvertently transmitted to his client—is irrelevant to resolution of the issue. Assuming no question of waiver, the problem would be no different if DeVries had obtained the same information from someone who overheard respondents discussing the matter in a restaurant or a courthouse corridor, or if it had been mistakenly sent to him through the mail or by facsimile transmission. Once he had acquired the information in a manner that was not due to his own fault or wrongdoing, he cannot purge it from his mind. Indeed, his professional obligation demands that he utilize his knowledge about the case on his client's behalf.

The sanctions were imposed to reimburse respondents for their efforts in seeking relief to which they were not entitled. In the absence of any clear statutory, regulatory or decisional authority imposing a duty of immediate

disclosure of the inadvertent receipt of privileged information, we conclude the sanction order cannot stand.[2]

The sanction order is reversed.

Peterson, P. J., and King, J., concurred.

---

[2]An additional problem stems from the fact that the sanctions were not imposed on DeVries personally, but upon the law firm with which he was affiliated and which was found to have had no knowledge of his receipt of the documents in question. Since respondents have not demonstrated any damage or harm resulting from DeVries's conduct for which they would be entitled to redress, we doubt that the doctrine of respondeat superior renders appellant liable for what the trial court perceived as personal, unethical conduct on the part of DeVries.