BILL LOCKYER Attorney General SUSAN DUNCAN LEE Deputy Attorney General
THE HONORABLE NORMAN L. VROMAN, DISTRICT ATTORNEY, COUNTY OF MENDOCINO, has requested an opinion on the following question:
May a superior court adopt local rules prohibiting law enforcement officers from (1) interrogating a minor in a juvenile detention facility, including before the filing of a juvenile petition, without the permission of the minor's attorney, (2) temporarily removing a minor from a juvenile detention facility for investigative purposes without the permission of the minor's parent, attorney, probation officer, and a juvenile court judge, and (3) placing a minor in a lineup without the permission of a juvenile court judge?
 CONCLUSION
A superior court may not adopt local rules prohibiting law enforcement officers from (1) interrogating a minor in a juvenile detention facility, including before the filing of a juvenile petition, without the permission of the minor's attorney, (2) temporarily removing a minor from a juvenile detention facility for investigative purposes without the permission of the minor's parent, attorney, probation officer, and a juvenile court judge, or (3) placing a minor in a lineup without the permission of a juvenile court judge.
 ANALYSIS
The question presented for resolution concerns the adoption of juvenile court rules regarding minors who are in custody in a juvenile detention facility under the supervision of the county probation department. To what extent may juvenile court rules prohibit, impede, or restrict law enforcement officers conducting legitimate investigations in (1) interrogating minors, (2) temporarily removing minors from detention facilities, and (3) placing the minors in a lineup? We conclude that such rules are impermissible in the circumstances presented.
Preliminarily, we note the statutory basis for adopting local court rules. Government Code section 68070, subdivision (a),[1]
provides:
 "Every court may make rules for its own government and the government of its officers not inconsistent with law or with rules adopted and prescribed by the Judicial Council. . . ."
Court rules that satisfy the conditions of section 68070 have the force of law. (Mann v. Cracchiolo (1985) 38 Cal.3d 18, 28-29; AlbermontPetroleum, Ltd. v. Cunningham (1960) 186 Cal.App.2d 84, 89.)
The rule-making power conferred by section 68070 is not a special grant of legislative power, but a confirmation of one aspect of a court's inherent powers. (In re Amber S. (1993) 15 Cal.App.4th 1260, 1264; 72 Ops.Cal.Atty.Gen. 196, 197 (1989).) All courts have inherent supervisory or administrative powers derived from the Constitution (Cal. Const., art. VI, § 1) which enable them to carry out their duties and to control the litigation before them. (Rutherford v. Owens-Illinois, Inc.
(1997) 16 Cal.4th 953, 967.) For example, courts have authority to formulate new forms of procedure where justice demands it. (Ibid.) The Legislature has enacted several statutes recognizing the authority of the courts to exercise reasonable control over their proceedings, to control the conduct of their ministerial officers, to expedite the business of the courts, and to promulgate rules designed to carry out these purposes. (See, e.g., Code Civ. Proc., §§ 128, 177,187, 575.1.)
A superior court has no power to adopt rules that are inconsistent with state statutes, California Rules of Court, or case law. (Rutherford v.Owens-Illinois, Inc., supra, 16 Cal.4th at p. 967; People v. Smith (2002)95 Cal.App.4th 283, 301; see generally California Court Reporters Assn.v. Judicial Council of California (1995) 39 Cal.App.4th 15, 21-26.) The test for determining whether a local rule is inconsistent with a statute is not whether it is impossible to give both concurrent effect. Rather, the Legislature's intent behind the statute must be ascertained, and the local rule must be consistent with that intent. (See California CourtReporters Association, Inc. v. Judicial Council, supra, 39 Cal.App.4th at pp. 25-26; People v. Ferguson (1990) 218 Cal.App.3d 1173, 1183.)
Moreover, when a local rule creates a procedure that raises complex and serious constitutional or policy questions, courts must exercise particular restraint, and should generally leave those issues for consideration by the Legislature in the first instance. (People v.Collie (1981) 30 Cal.3d 43, 51, 55-56; In re Amber S., supra,
15 Cal.App.4th at pp. 1264-1266; 72 Ops.Cal.Atty.Gen., supra, at p. 199; see also Rutherford v. Owens-Illinois, Inc., supra, 16 Cal.4th at p. 968 ["we question the propriety of resolving by local court rule a matter as substantive as whether the doctrine of `alternative liability' is applicable to asbestos-related latent personal injury actions"].)
With this statutory background in mind, we turn to the California Constitution to determine whether the court rules in question are a permissible exercise of judicial power. The Constitution separates the powers of state government into three branches: the legislative, the executive, and the judicial. "Persons charged with the exercise of one power may not exercise either of the others except as permitted by this Constitution." (Cal. Const., art. III, § 3.) The primary purpose of the separation-of-powers doctrine is to prevent the combination of fundamental powers of government in the hands of a single person or group. (Manduley v. Superior Court (2002) 27 Cal.4th 537, 557; Parker v.Riley (1941) 18 Cal.2d 83, 89.)
The separation-of-powers doctrine has not been interpreted to require "the rigid classification of all the incidental activities of government, with the result that once a technique or method of procedure is associated with a particular branch of the government, it can never be used thereafter by another." (Manduley v. Superior Court, supra,
27 Cal.4th at p. 557, quoting Parker v. Riley, supra, 18 Cal.2d at p. 90.) Thus, a court may properly promulgate rules as necessary to effectuate its power to control the proceedings before it, without running afoul of the separation-of-powers constitutional provision — just as the Legislature may compel the attendance of witnesses and punish contempt, or an executive agency may hold hearings and find facts. (See Parker v.Riley, supra, 18 Cal.2d at pp. 90-91.) The limiting principle is that the exercise of such overlapping functions must be incidental and ancillary to the core powers of the branch in question, rather than a usurpation of a power delegated to another branch. (Id. at pp. 88-89.)
Here, we find that a core function of the executive branch, and not of the judicial branch, is the investigation and gathering of evidence relating to criminal offenses. (See California Correctional PeaceOfficers Assn. v. State of California (2000) 82 Cal.App.4th 294, 311;Triple A Machine Shop, Inc. v. State of California (1989)213 Cal.App.3d 131, 144-145; Hicks v. Board of Supervisors (1977)69 Cal.App.3d 228, 241-242.) Section 26602 states: "The sheriff shall . . . investigate public offenses which have been committed." Police officers have similar powers. (§ 41601.) More specifically, law enforcement officers have a mandatory duty to investigate reports of child abuse (Pen. Code, § 11166, subd. (a); Alejo v. City of Alhambra (1999) 75 Cal.App.4th 1180, 1185-1186), including when a minor is the suspect in committing the abuse (see, e.g., In re John S. (1988) 199 Cal.App.3d 441). Criminal acts that are committed at a juvenile detention facility by a minor, such as assaulting a probation department employee, are obviously subject to vigorous law enforcement investigation.
In performing their investigative functions, law enforcement officers are not subject to general judicial control due to the application of the separation-of-powers doctrine. "`The balance between the Executive and Judicial branches would be profoundly upset if the Judiciary assumed superintendence over the law enforcement activities of the Executive branch upon nothing more than a vague fear or suspicion that its officers will be unfaithful to their oaths or unequal to their responsibility.'" (Triple A Machine Shop, Inc. v. State of California, supra,
213 Cal.App.3d at p. 145, quoting Reporters Com. v. American Telephone Telegraph (D.C. Cir. 1978) 593 F.2d 1030, 1065.)
Even within the context of litigation that alleges some abuse of power by law enforcement officers, their activities may not be subjected to prior restraint by the courts except in extraordinary circumstances. (Triple A Machine Shop, Inc. v. State of California, supra,
213 Cal.App.3d at p. 145; Pitchess v. Superior Court (1969) 2 Cal.App.3d 644,648-649; Manchel v. County of Los Angeles (1966) 245 Cal.App.2d 501,505-507, 510.) In the present situation, we do not have the issuance of a court order in pending litigation after due notice and an opportunity to be heard. Nor have we been presented with any extraordinary circumstances justifying a prior restraint on law enforcement activities.
Accordingly, the local court rules in question violate the constitutional separation-of-powers doctrine. They also are inconsistent with the language of section 68070. Court rules that subject legitimate law enforcement investigations to the prior approval of a minor's parents, attorneys, probation officers, or a judge would not be for the court's "own government and the government of its officers. . . ."
Our conclusion is supported by various statutes enacted by the Legislature to provide special protections for minors who are in custody. Of particular relevance to our inquiry are statutory provisions requiring special advisements for minors of their constitutional rights (Welf. Inst. Code, §§ 316,625, 627.5) and providing for the establishment of standard procedures for police agencies and prosecutors to follow in interviewing minors (Pen. Code, § 13517.5).
Finally, we find that our analysis of the California Constitution, statutes, and cases is consistent with federal law, including federal constitutional restraints placed upon law enforcement officers in conducting investigations involving minors in custody. With regard to interrogations of minors without the presence of defense counsel, theFifth Amendment to the United States Constitution confers a privilege against self-incrimination, that is, no person "shall be compelled in any criminal case to be a witness against himself." In order to safeguard this right, and to counteract the inherently compelling pressures of custodial interrogation, the United States Supreme Court in Miranda v.Arizona (1966) 384 U.S. 436, 444, established the now familiar rights that (1) before questioning begins, subjects must be warned that they have the right to remain silent, (2) any statements they do make may be used against them, and (3) they have the right to have an attorney present, either retained or appointed. These rights, however, may be waived, and any statements that the subject makes are admissible if the prosecution demonstrates that the subject made a knowing and intelligent waiver of his or her rights. (Id. at pp. 444, 479.)
The Fifth Amendment and Miranda protections apply to minors in custodial interrogation. (See Fare v. Michael C. (1979) 442 U.S. 707.) Likewise, minors are capable of waiving their rights. (Id. at p. 725;People v. Lara (1967) 67 Cal.2d 365, 383; People v. Maestas (1987)194 Cal.App.3d 1499, 1508-1509.) The voluntariness of any confession or waiver is determined based upon the totality of the circumstances, including the minor's age, intelligence, education, background, experience, and ability to comprehend the effect of the statements. (Farev. Michael C., supra, 442 U.S at pp. 725-726; People v. Lara, supra,
67 Cal.2d at pp. 376, 378-379, 382-386; People v. Maestas, supra,
194 Cal.App.3d at pp. 1508-1509; In re Abdul Y. (1982) 130 Cal.App.3d 847,862-863.) The consent of a lawyer is not required to make a minor's confession or waiver of right "voluntary." As the Supreme Court stated inPeople v. Lara, supra, 67 Cal.2d 365:
 "We cannot accept the suggestion of certain commentators . . . that every minor is incompetent as a matter of law to waive his constitutional rights to remain silent and to have an attorney unless the waiver is consented to by an attorney or by a parent or guardian who has himself been advised of the minor's rights. Such adult consent is of course to be desired, and should be obtained whenever feasible. But as we will explain, whether a minor knowingly and intelligently waived these rights is a question of fact; and a mere failure of the authorities to seek the additional consent of an adult cannot be held to outweigh, in any given instance, an evidentially supported finding that such a waiver was actually made." (Id. at pp. 378-379.)
In Moran v. Burbine (1986) 475 U.S. 412, the United States Supreme Court was asked to extend a criminal suspect's Miranda protections to include a requirement that police interrogators be required to inform a suspect when his lawyer is trying to reach him. The court declined to do so, noting that such an extension "would work a substantial and, we think, inappropriate shift in the subtle balance struck in [Miranda]" between effective law enforcement and the protection of individual rights. (Id. at p. 426.)[2]
In a similar vein, in People v. Duck Wong (1976) 18 Cal.3d 178, 187, the California Supreme Court cited "compelling policy reasons" in refusing to extend the Sixth Amendment right to counsel to custodial interrogations:
 ". . . Following the commission of a possible crime, it is essential that the police not be unduly hampered in their investigation. Under defendants' proposed extension of [People v. Isby (1968) 267 Cal.App.2d 484], however, interrogation of suspects could be delayed indefinitely while the officers attempted to locate the suspect's counsel, notify him of the proposed interview, and either obtain his consent thereto or permit his participation therein. We find no convincing reasons why such a cumbersome procedure is necessary to protect a suspect's constitutional rights."
Properly speaking, there is no Fifth Amendment right to counsel; as we have indicated, counsel is made available in investigative custodial interrogations as a prophylactic device to safeguard theFifth Amendment's privilege against self-incrimination. (See McNeil v.Wisconsin (1991) 501 U.S. 171, 176-177; People v. Avila (1999)75 Cal.App.4th 416, 421.) The right to counsel in criminal proceedings arises from the Sixth Amendment, which guarantees to the accused the right "to have the assistance of counsel for his defense."
The Sixth Amendment right to counsel attaches when the government agency initiates formal criminal proceedings and applies at all "critical stages," including post-filing interrogations. (See Michigan v. Jackson
(1986) 475 U.S. 625, 629; People v. Clair (1992) 2 Cal.4th 629, 657.) TheSixth Amendment right, however, is "offense-specific"; that is, an accused who is represented by counsel in connection with one offense has no Sixth Amendment right to counsel's assistance in investigative interrogations pertaining to any other offense. (See Texas v. Cobb (2001)532 U.S. 162, 164, 171-172 ["it is critical to recognize that the Constitution does not negate society's interest in the ability of police to talk to witnesses and suspects, even those who have been charged with other offenses"]; McNeil v. Wisconsin, supra, 501 U.S. at pp. 175-76;People v. Clair, supra, 2 Cal.4th at pp. 657-658; In re Robert E (2000)77 Cal.App.4th 557, 561.)
In McNeil v. Wisconsin, supra, 501 U.S. 171, the United States Supreme Court refused to adopt a rule that an accused's assertion of the right to counsel in one proceeding signifies a request for assistance of counsel in unrelated interrogations, stating that the proposed rule would "seriously impede effective law enforcement. . . . Since the ready ability to obtain uncoerced confessions is not an evil but an unmitigated good, society would be the loser. Admissions of guilt resulting from valid Miranda waivers `are more than merely "desirable"; they are essential to society's compelling interest in finding, convicting, and punishing those who violate the law.'" (Id. at pp. 180-181, quoting Moranv. Burbine, supra, 475 U.S. at p. 426.) The California Supreme Court has rejected similar proposals, and for like reasons. (See People v. Mattson
(1990) 50 Cal.3d 826, 867-869; People v. Duck Wong, supra, 18 Cal.3d at pp. 185-187.) Consequently, in requiring the consent of counsel before interviewing a minor, including when counsel is representing the minor in another matter, a local court rule would not only create a procedure that implicates complex and sensitive constitutional and policy issues but would be inconsistent with the requirements of the federal Constitution.
In summary, legitimate law enforcement investigative duties cannot be made subject to the prior approval, and thus possible disapproval, of parents, attorneys, probation department employees, or judges in the circumstances presented. While on occasion the requisite information may be obtained by law enforcement officers from other sources, the separation-of-powers doctrine does not allow for a court rule to intrude upon an otherwise appropriate investigative power of law enforcement officers as described herein.
We conclude that a superior court may not adopt local rules prohibiting law enforcement officers from (1) interrogating a minor in a juvenile detention facility, including before the filing of a juvenile petition, without the permission of the minor's attorney, (2) temporarily removing a minor from a juvenile detention facility for investigative purposes without the permission of the minor's parent, attorney, probation officer, and a juvenile court judge, or (3) placing a minor in a lineup without the permission of a juvenile court judge.
[1] All references hereafter to the Government Code are by section number only.
[2] In People v. Houston (1986) 42 Cal.3d 595, 610, the California Supreme Court concluded that under the right to counsel afforded by the California Constitution, article I, section 15, a suspect may not be denied the opportunity "to meet with his retained or appointed counsel who has taken diligent steps to come to his aid." The exclusionary rule that followed from Houston, however, was abrogated by the passage of Proposition 8, which added section 28 to article I of the Constitution. (People v. Johnson (1992) 3 Cal.4th 1183, 1222; see also People v. May
(1988) 44 Cal.3d 309, 315-319.)