Filed 6/23/26

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| OANA VERONICA POPA,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>AARON SIMPSON et al.,<br><br>    Defendants and Appellants. | G065177<br><br>(Super. Ct. No. 30-2019-01112301)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Michael J. Strickroth, Judge. Reversed.

Callahan & Blaine, Edward Susolik, Grigory Rchtouni and Farnaz Salessi for Defendants and Appellants.

K&L Law Group, Marc Y. Lazo; and Alexander Powers for Plaintiff and Respondent.

\*          \*          \*

This appeal arises from an order disqualifying appellant and defendant Aaron Simpson's counsel, Callahan & Blaine (C&B), in Oana Popa's civil suit against him for sexual battery. During the course of discovery, Popa produced a document listing various categories of documents, together with short commentary on the nature of the categories, and a website link and password to access the documents being described. The document is not clearly addressed to anyone in particular, much less an attorney, though Popa now claims it was a letter to her attorney. Once the files were accessed on the internet, they were contained in a folder named "marc lazo files," which is the name of Popa's attorney. The documents found in the folders are not clearly privileged, and, in fact, appear to be relevant and discoverable documents.

Popa's counsel did not realize that he had produced this document until after discovery had closed, when C&B mentioned some of the files in communications with Popa's counsel. Popa promptly moved to disqualify C&B. The court's tentative was to deny the motion, but it changed its mind at the hearing and granted the motion. Simpson appealed.

We reverse. The inadvertently produced document was not clearly privileged and thus did not trigger C&B's ethical duty to stop looking at it. Additionally, C&B did not obtain an unfair advantage by looking at either the document produced or the relevant and discoverable documents contained on the website. Accordingly, it was an abuse of discretion to disqualify C&B.

FACTS

In 2019, Popa filed the underlying complaint against Simpson alleging various torts arising out of a romantic relationship the two had.[1] Popa alleges Simpson psychologically abused her and, at times, touched her in sexual ways without her consent. She further alleges that he sometimes pushed her and kept her against her will, and that he generally engaged in "harassing, controlling, and obsessive conduct." Somewhat confusingly, the complaint alleges that "[Simpson] never hit Ms. Popa physically," but then later alleges, "[Simpson] . . . physically beat Ms. Popa."

In 2022, during the course of discovery, Leanne promulgated document production requests generally seeking any documents that support Popa's claims against the Simpsons. In response, Popa produced 1,426 bates-stamped pages of documents, including photos showing Popa with abrasions on her back.

Popa also inadvertently produced the document that is at the center of this appeal. She produced a three-page document that does not have any letterhead and is not addressed to anyone. It simply starts with a Dropbox website and password. It then is divided into 14 sections, ranging in length between one sentence and two paragraphs. Each section contains a description of a category of documents relevant to this lawsuit, sometimes with a short commentary, and a Dropbox link to that particular category. The document does not have any salutation and is unsigned. It has one passing reference to "Marc", and two references to "you guys," but otherwise does not have any features suggesting it is a letter. There is no indication in the

---

[1] The complaint also names Simpson's wife, Leanne, as a defendant. We will refer to Aaron as Simpson, Leanne by her first name, and to them both collectively as the Simpsons.

document that it is confidential or for attorney eyes only.[2] The trial court referred to this as the "letter/memo," which accurately captures the ambiguity of the document; we will adopt that term as well.

The documents stored on Dropbox were in a folder named "marc lazo files" (the name of Popa's attorney), and within that folder were various subfolders corresponding to the categories of documents described in the letter/memo.

The documents found in the Dropbox folders appear to be non-privileged and directly relevant to the lawsuit. Broadly speaking, they contain various types of documents, including text messages and other communications between Simpson, Popa, and a third party named Capusan (who Popa was also in a romantic relationship with); photos of the parties; financial records reflecting gifts from Simpson to Popa and a joint venture the two started; and medical records from a 5150 hold on Popa (which Popa attributes to Simpson).

The Dropbox files contained two documents that appear to be of most interest to Simpson. The first was a hand written note from Popa to Simpson in which she states that her suicide attempt, which she attributed to Simpson's harassment in her complaint, was actually motivated by the breakup of her relationship with Capusan. The second was a series of text messages in which Popa appears to admit that the photos of the abrasions on her back were not caused by Simpson, as her document production would suggest, but were actually caused by Capusan, and that Simpson never hit her, which, arguably, contradicts her complaint.

---

[2] The version in our record has the word "Confidential" as a footer. However, that footer was added after it was initially produced.

The inadvertent production went unnoticed by Popa until December 22, 2024, when C&B raised the above documents in various communications, including settlement discussions, with Popa's counsel. In response to Popa's counsel's claim that the documents were privileged, C&B agreed to destroy any copies they had of the letter/memo, but refused to destroy copies of the documents recovered from Dropbox. Approximately two weeks later, Popa filed the underlying motion to disqualify C&B.

The court's tentative decision was to deny the motion. The court concluded that the letter/memo simply summarized the documents in the Dropbox folders and did not put Popa at an unfair disadvantage, and the Dropbox documents themselves were not privileged. However, after a hearing, the court reversed its tentative. Although the court acknowledged that the letter/memo was "less than clear in its nature as privileged and/or confidential," it found that Simpson's counsel was on notice of the privileged nature of the communication as soon as he accessed Dropbox and saw the "marc lazo files" folder, thus triggering counsel's duty under *State Compensation Insurance Fund v. WPS, Inc.* (1999) 70 Cal.App.4th 644 (*State Fund*) to immediately stop and notify opposing counsel of the production. Based on Simpson's use of the Dropbox documents in settlement communications, the court concluded injury to Popa was unavoidable and granted the motion to disqualify C&B. The court further ordered Simpson and C&B to destroy all copies of the Dropbox documents and to refrain from discussing them with subsequent counsel. The court also sealed both the letter/memo and all copies of the Dropbox files. Simpson appealed the next day. (See *URS Corp. v. Atkinson/Walsh Joint Venture* (2017) 15 Cal.App.5th 872, 878 [order disqualifying counsel is immediately appealable].)

5

DISCUSSION

"Generally, a trial court's decision on a disqualification motion is reviewed for abuse of discretion. . . . . However, the trial court's discretion is limited by the applicable legal principles. [Citation.] Thus, where there are no material disputed factual issues, the appellate court reviews the trial court's determination as a question of law. [Citation.] In any event, a disqualification motion involves concerns that justify careful review of the trial court's exercise of discretion." (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1143–1144.)

An attorney's ethical obligations triggered by receipt of inadvertently produced privileged material is set forth in *State Fund*, which our high court adopted in *Rico v. Mitsubishi Motors Corp.* (2007) 42 Cal.4th 807, 818 (*Rico*). *State Fund* held: "When a lawyer who receives materials that *obviously* appear to be subject to an attorney-client privilege or otherwise *clearly* appear to be confidential and privileged and where it is reasonably apparent that the materials were provided or made available through inadvertence, the lawyer receiving such materials should refrain from examining the materials any more than is essential to ascertain if the materials are privileged, and shall immediately notify the sender that he or she possesses material that appears to be privileged. The parties may then proceed to resolve the situation by agreement or may resort to the court for guidance with the benefit of protective orders and other judicial intervention as may be justified. We do, however, hold that whenever a lawyer ascertains that he or she may have privileged attorney-client material that was inadvertently provided by another, that lawyer must notify the party entitled to the privilege of that fact." (*State Fund, supra,* 70 Cal.App.4th at pp. 656–657, italics added.)

6

In *State Fund* the documents in question featured a prominent header, stating, "'Attorney-Client Communication/Attorney Work Product'" and "'Do Not Circulate or Duplicate.'" (*State Fund*, *supra*, 70 Cal.App.4th at p. 648, some capitalization omitted.) However, such prominent notifications are not necessary for the *State Fund* rule to apply. "'[T]he absence of prominent notations of confidentiality does not make them any less privileged.' The *State Fund* rule is an objective standard. In applying the rule, courts must consider whether reasonably competent counsel, knowing the circumstances of the litigation, would have concluded the materials were privileged, how much review was reasonably necessary to draw that conclusion, and when counsel's examination should have ended." (*Rico*, *supra*, 42 Cal.4th at p. 818.)

In *Rico*, for example, a plaintiff's attorney inadvertently came into possession of 12 pages of notes reflecting a summary of a meeting between defense counsel and defense experts, which also had defense counsel's annotations on it. Plaintiff's counsel knew "within a minute or two" that it was a privileged document, but, nevertheless, proceeded to make copies and distribute it to his own experts. (*Rico*, *supra*, 42 Cal.4th at p. 812.) The distribution put defendants "at a great disadvantage," and the court affirmed disqualification of both plaintiff's attorneys and experts. (*Id.* at p. 819; see also *McDermott Will & Emery LLP v. Superior Court* (2017) 10 Cal.App.5th 1083, 1111 [e-mail from attorney to client is presumptively privileged]; *Johnson v. Department of Transportation* (2025) 109 Cal.App.5th 917, 944 [same].)

Here, the trial court's order disqualifying C&B runs into two insurmountable problems. First, the letter/memo is too ambiguous to trigger

*State Fund* duties. Second, even if *State Fund* duties were triggered, C&B has not misused *privileged* information.

*State Fund* duties are triggered by receipt of an obviously privileged document. Although *Rico* holds that the document need not explicitly describe itself as privileged, in the examples cited above, the receiving attorney either admitted they quickly realized the document was privileged (*Rico*), or the case involved an e-mail where the sender and recipient were clearly the attorney and client.

The letter/memo here could hardly be more different. To begin with, it is not addressed to anyone. Rather, the letter/memo starts by simply reciting a password and Dropbox link. The vast bulk of the letter/memo is Popa reciting categories of documents and offering brief commentary on the documents. Although there is one reference to "Marc" midway through the first page, that reference is in the third person, and the only other indication to suggest that the letter/memo is anything other than personal notes by Popa is two references to "you guys"—once midway through the first page, and a second reference on the third page. There is no hint in the letter/memo who "you guys" refers to. Moreover, there is nothing in the letter/memo that makes it reasonably apparent that it was produced inadvertently. It contains Popa's commentary on the evidence, which commentary is heavily biased in her favor. The commentary is relevant to the issues, and there is nothing about the commentary to suggest it was produced unintentionally. In short, it is unclear who the letter/memo is addressed to, and there is nothing in it to clearly suggest that its production was inadvertent.

The trial court essentially agreed with this, describing the letter as "less than clear in its nature as privileged and/or confidential," but was persuaded that the file structure of the Dropbox folder—in particular, that

8

the parent folder was named "marc lazo files"—put C&B on notice that the materials within were privileged. We disagree for at least two reasons. First, the inference C&B supposedly should have drawn was simply not true: the materials within the "marc lazo files" were not actually privileged.[3] Second, we agree with C&B that merely associating opposing counsel's name with a digital folder does not make it clear or obvious that the documents are privileged such that C&B had to stop in its tracks. Marc Lazo was the attorney producing the documents. It is entirely reasonable to presume that he was producing electronic documents under a folder with his name on it, or that Popa originally created the collection with that name but it was then produced in its original format because the letter/memo and the documents themselves were not privileged. As a result, *State Fund* duties never triggered.

But even if *State Fund* duties had triggered, we hold it was an abuse of discretion to disqualify C&B under the circumstances. "We do not disqualify a lawyer from representing a client to punish the lawyer's mistakes or even bad behavior. [Citations.] The discipline of lawyers in California is a function reserved to the State Bar. [Citations.] Rather, disqualification of counsel is a prophylactic remedy designed to mitigate the unfair advantage a party might otherwise obtain if the lawyer were allowed to continue representing the client." (*City of San Diego v. Superior Court* (2018) 30 Cal.App.5th 457, 470–471.)

---

[3] Or at least the court made no findings that they were privileged, and the documents we have seen and that are described in the record do not seem to be privileged. Popa is free to argue in future proceedings that individual documents within the Dropbox files are privileged.

What makes the disqualification order here distinguishable from any published case we are aware of is that C&B was disqualified *not* for its extensive use of the privileged letter/memo, but instead for its use of non-privileged, discoverable, and highly relevant documents. So far as we can determine, the letter/memo itself does not create any significant vulnerabilities for Popa, and Popa has not argued that it does. As we observed above, the letter/memo is drafted in an argumentative fashion favoring Popa. Nor is there anything in the record suggesting that C&B ever attempted to capitalize on the letter/memo itself. In fact, C&B readily relinquished the letter/memo as soon as Popa claimed it was privileged. Instead, C&B was disqualified for relying on two documents within the Dropbox files: the handwritten letter from Popa to Simpson, and a series of text messages that Popa sent to third party Capusan, neither of which are privileged, and both of which are highly relevant to Popa's allegations.[4]

The use of nonprivileged and relevant evidence generally does not constitute an unfair advantage at trial such that disqualification would be warranted. In *Aerojet–General Corp. v. Transport Indemnity Insurance* (1993) 18 Cal.App.4th 996, for example, an attorney was sanctioned when it was discovered that the attorney had deposed a witness that he had identified by reading a privileged memo that had been inadvertently produced. The *Aerojet* court reversed the sanctions award, stating, "whether the existence and

---

[4] Popa argues that the letter/memo reflects her counsel's thoughts and impressions, i.e., work product, because it is organized into categories that were first requested by Lazo. However, Lazo's request is not in the record and was never viewed by C&B, and based on our review of the letter/memo, the categories are quite generic and do not give away any significant trial strategies, nor do they reveal any vulnerabilities. In short, they do not prejudice Popa in any way.

identity of a witness or other nonprivileged information is revealed through formal discovery or inadvertence, the end result is the same: the opposing party is entitled to the use of that witness or information. This fundamental concept was lost in the skirmish below." (*Id.* at p. 1004.)

We conclude the same fundamental concept should have been applied here. The touchstone of our analysis is whether Simpson gained an unfair advantage. It cannot be unfair to permit Simpson to use a letter that Popa wrote *to him*. On the contrary: it would be unfair to *deny* him the use of that letter. The same is true of the text messages that Popa sent to Capusan. The photos of abrasions on her back in those text messages were intentionally produced by Popa (sans the accompanying texts), suggesting she intended to attribute the wounds to Simpson. Yet in the text messages she attributes the wounds to Capusan. It would be highly unfair to deny Simpson the ability to present that impeachment evidence.

A trial is ultimately a search for the truth. "The search for truth is not served but hindered by the concealment of relevant and material evidence." (*In re Ferguson* (1971) 5 Cal.3d 525, 531.) As discussed above, the handwritten letter from Popa to Simpson and the texts between Popa and third party Capusan are relevant, not privileged, and will facilitate the ascertainment of truth. Consequently, it was an abuse of discretion to disqualify C&B for its use of nonprivileged, relevant, and discoverable evidence.

11

## DISPOSITION

The order of February 4, 2025, is reversed to the extent it disqualified C&B, ordered Simpson and C&B to destroy all copies of the Dropbox files, and sealed all documents obtained from the Dropbox files. Our holding does not affect the court's ruling sealing and ordering destruction of the letter/memo, which has not been challenged on appeal. Simpson shall recover his costs incurred on appeal.[5]

SANCHEZ, ACTING P. J.

WE CONCUR:

SCOTT, J.

SCHWARM, J.*

*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

---

[5] Popa's motion to augment the record filed on September 22, 2025, is granted.